Argued May 9, reversed August 23, 1968

## CITY OF PORTLAND, *Respondent, v.*
## THOMAS JAMES, *Appellant.*

444 P. 2d 554

*Oscar D. Howlett,* Portland, argued the cause and filed a brief for appellant.

*Richard A. Braman,* Deputy City Attorney, Portland, argued the cause for respondent. With him on

the brief were Alexander Brown, City Attorney, and Walter Yeager, Deputy City Attorney, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

O'CONNELL, J.

Defendant was charged with the violation of Section 16-617 of the Police Code of the City of Portland, which reads as follows:

> "Between the hours of 1 and 5 o'clock A.M. it shall be unlawful for any person to roam or be upon any street, alley or public place, without having and disclosing a lawful purpose."

Defendant demurred to the complaint contending that the ordinance violated the due process and equal protection clauses of both the United States and Oregon Constitutions. The trial court overruled the demurrer and entered a judgment imposing upon defendant a fine of $25. Defendant appeals.

The ordinance in question was held to be free from constitutional infirmity in *City of Portland v. Goodwin,* 187 Or 409, 210 P2d 577 (1949). The court construed the language "without having a lawful purpose" as if it had read "having an unlawful purpose," explaining that "The overt act which violates the ordinance and thus authorizes arrest is the willful act of going upon the street during the prohibited hours and then and there manifesting by conduct an unlawful purpose." (187 Or at 429.)

Although the court's transposition of the language of the ordinance into a proscription against acts manifesting an unlawful purpose greatly strains the language of the ordinance, we shall accept the

court's construction.⊙ But even as it is so construed, we now hold that the ordinance is invalid on the ground that it violates Article I, Section 9 and the due process clause of Article I, Section 10 of the Oregon Constitution, as well as the Fourth and Fourteenth Amendments of the United States Constitution.

In *City of Portland v. Goodwin, supra,* the court concluded that "the words 'lawful purpose' are not so indefinite as to invalidate the ordinance." (187 Or at 424.) The reasoning employed by the court in reaching this conclusion is not entirely clear. Under its interpretation a citizen violates the ordinance if, while on the streets within the specified hours, he manifests by his conduct an unlawful purpose. What are such purposes and how are they manifested? The court states that the conduct must disclose "a purpose to violate some law other than the ordinance in question." (187 Or at 430.) Moreover, the court makes it clear that this purpose is not sufficiently disclosed if the conduct does no more than arouse a suspicion that the citizen is about to violate some other law.

The requirement that the conduct disclose "a purpose to violate some law other than the ordinance in question" is not further explained by the court. The reference to the violation of some other law can be interpreted to mean either (1) that the police officer may make an arrest only if he observes conduct which reveals a purpose to commit a specific crime which the police officer could then and there name, such as the crime of burglary, or (2) that the officer may make

---

⊙ Thompson, Police Control over Citizen Use of the Public Streets, 49 J Crim L C & P S 562, 566 (1959) says of *City of Portland v. Goodwin:*

"* * * It is submitted that the court's construction of the law virtually demolishes it and that the case is no authority for the principle that a valid curfew law may be enacted."

the arrest if the conduct reveals a purpose to commit a crime of some description although the conduct is such that the officer is unable to determine which crime it is likely to be.

If the ordinance is construed as requiring (1), then the officer could make a valid arrest for an attempt to commit a crime (assuming that the conduct could be regarded as more than a mere preparation or planning for the commission of the crime). If this is the meaning of the ordinance, it would serve no purpose because even without the ordinance a valid arrest could be made for the attempt to commit a specific crime.

It seems apparent to us that the ordinance is a part and parcel of the general scheme underlying the various vagrancy laws, the design of which is to give a police officer the right to arrest persons whose appearance or actions arouse the officer's suspicion that the suspect has been or is likely to be involved in some transgression of the law not then specifically identifiable by the officer. In short, the ordinance is designed to permit "arrests on suspicion."[2]

---

[2] See Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L J 1 (1960).

The purpose of vagrancy legislation is described by Amsterdam, Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and The Like, 3 Crim L Bull 205, 219 (1967), as follows:

"The plain fact of the matter, of course, is that vagrancy legislation is not essentially aimed at the prohibition of any very specific conduct, in the service of any very specific regulatory objective. It is purposefully made obscure, to serve the function of a catch-all—what Professor Caleb Foote has rightly called 'the garbage pail of the criminal law.' Foote * * * [Vagrancy-Type Law and Its Administration, 104 U Pa L Rev 603 (1956)] supra, at 631. In his dissenting opinion in Winters v. New York, 333 U.S. 507, 540 (1948), Mr. Justice Frankfurter with characteristic insight captured the essential character of statutes

'of the type that seek to control "vagrancy." These stat-

Designed as it is the ordinance is void for vagueness. Two preliminary observations are important. It is not our intention to say that the police may not stop and question persons who arouse a reasonable suspicion that they are connected with criminal activity.[3] Nor do we express any opinion as to the validity of an ordinance cast in language similar to that used in the Model Penal Code permitting, under proper safeguards, the arrest of persons who loiter or prowl under circumstances creating a justifiable alarm for the safety of persons or property.[4]

The ordinance before us, however, does not satisfy these limitations. It purports to make criminal the

---

utes are in a class by themselves in view of the familiar abuses to which they are put. See Note, 47 Col. L. Rev. 613, 625. Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesireable in the eyes of the police and prosecution, although not chargeable with any particular offense. In short, these "vagrancy statutes" and laws against "gangs" are not fenced in by the text of the statutes or by the subject matter so as to give notice of conduct to be avoided.' "

[3] See Terry v. Ohio, 36 Law Week 4578 (June 10, 1968); Commonwealth v. Lehan, 347 Mass 197, 196 NE2d 840 (1964). It is not necessary at this time to consider the applicability of Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed2d 694, 10 ALR3d 974 (1966) and Escobedo v. Illinois, 378 US 478, 84 S Ct 1758, 12 L Ed2d 977 (1964) to such an interrogation.

[4] Cf., § 250.6 of the Model Penal Code (May 4, 1962):

"A person commits a violation if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. * * *"

The comment appended to the section explains that "The principal developments in the Section since Tentative Draft No. 13 are as follows: We have changed the basis of the offense from justifiable 'suspicion' that the actor was engaged or about to engage in crime, to justifiable 'alarm' for the safety of persons or property. This seems desirable to save the section from attack and possible invalidation as a subterfuge by which the police would be empowered to arrest and search without probable cause."

mere presence of a person on the streets when a police officer has the suspicion that the suspect does not have a lawful purpose in being there. Under these circumstances, the ordinance purports to authorize not simply detention for questioning but arrest and conviction.

As we have previously observed, the ordinance authorizes arrest upon suspicion only. Since the conduct manifesting an "unlawful purpose" need not manifest a purpose to commit a specific crime, the officer is authorized to arrest if the conduct suggests to him that the suspect has in mind the commission of some type of crime, even though the officer does not know what crime the suspect has in mind.[5] This criterion for arrest is too vague to provide a standard adequate for the protection of constitutional rights. An ordinance with such vague terms is subject to criticism on various grounds.[6] The principal evil of such vague legislation is that it invites arbitrary and discriminatory enforcement. The police officer's suspicion that the suspect does not have a "lawful purpose" is the only standard prescribed for arrest and conviction. But as the court in *Alegata v. Common-*

---

[5] Amsterdam, *supra* 3 Crim L Bull at 216-233; The Vagrancy Concept Reconsidered: Problems and Abuses of Status Criminality, 37 N Y U L Rev 102 at 121 (1962); Note, Vagrancy: A Constitutional Battle, 16 Syra L Rev 646 (1965).

[6] See Aigler, Legislation in Vague or General Terms, 21 Mich L Rev 831 (1923); Collings, Unconstitutional Uncertainty—An Appraisal, 40 Cornell L Q 195 (1955); Freund, The Use of Indefinite Terms in Statutes, 30 Yale L J 437 (1921); Freund, The Supreme Court and Civil Liberties, 4 Vand L Rev 533, 539-540 (1951); Scott, Constitutional Limitations on Substantive Criminal Law, 29 Rocky Mt L Rev 275, 287-289 (1957); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U Pa L Rev 67 (1960); Note, Due Process Requirements of Definiteness in Statutes, 62 Harv L Rev 77 (1948); Note, Constitutional Law, Void for Vagueness: An Escape from Statutory Interpretation, 23 Ind L J 272 (1948).

*wealth,* 353 Mass 287, 231 NE2d 201, 205 (1967), observes:

> "The problem with suspicion is that it is a subjective term incapable of providing any intelligible standard to guide either suspect or court. The absence of limiting standards leaves the citizen at the 'mercy of the officer's whim or caprice.' Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879. See Commonwealth v. Carpenter, 325 Mass. 519, 91 N.E.2d 666."

■ In all of our cases heretofore decided we have held that an arrest is valid only if it is based upon probable cause. To sustain the ordinance in question would be to allow a crime to be defined so as to render the requirement of probable cause to effect a valid arrest an illusory protection.[⊘] The requirement of probable cause is imposed in order to limit police interference with the citizen's constitutional rights. Neither the legislative assembly nor the city council has the power to circumvent this safeguard by casting legislation in a form which makes conduct which creates only suspicion a crime. To say that an officer may arrest if he has probable cause to believe that the suspect's conduct is suspicious is to speak in anomalies.

Expressing our view in a slightly different context, the court in *Alegata v. Commonwealth, supra,* 231 NE2d at 209, said:

> "* * * The use of the vagabond charge rather than a charge of theft or attempted theft suggests an absence of probable cause and the consequent evasion of traditional constitutional safeguards

---

[⊘] Note, Vagrancy Laws and the Right to Privacy, 2 U San Fran L Rev 337 at 344-345 (1968); Note, supra 37 N Y U L Rev at 129; Comments to Tentative Draft No. 13, Model Penal Code, at p. 60 (Apr. 19, 1961). Cf., Amsterdam, *supra* 3 Crim L Bull at 227.

that results when suspicion, which admits of no predictable boundaries, is the basis for arrest and punishment. As Mr. Justice Jackson (sitting as Circuit Justice) said in Williamson v. United States, 184 F.2d 280, 282-283 (2d Cir.), '[I]t is * * * difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes. Imprisonment to protect society from predicted but unconsummated offenses is so unprecedented in this country and so fraught with danger of excesses and injustice that I am loath to resort to it, even as a discretionary judicial technique to supplement conviction of such offenses of which defendants stand convicted.' "

The interest of freedom of movement on the streets and the attendant interests of privacy and human dignity deserve the most careful constitutional protection. The ordinance in question is too vague to provide the necessary protection and must, therefore, be declared invalid.

The judgment of the trial court is reversed.