Dorothy Ann **KIRKWOOD**, Plaintiff,

v.

**Buford ELLINGTON**, Governor of the State of Tennessee, et al., Defendants.

Quinlock Davis, Duzzie Jones, Mary Smith, Bessie Walton, Linda Smith, Rhonda Alexander, Barbara Montgomery, Carolyn Baker, Carolyn Davis, Plaintiff-Intervenors.

**Civ. No. 68–271.**

United States District Court
W. D. Tennessee, W. D.
March 18, 1969.

462

Ronald Krelstein, Phillip Kuhn, Memphis, Tenn., for plaintiff.

Eugene C. Gaerig, Frierson M. Graves, Jr., William W. Farris, Asst. County Atty., Memphis, Tenn., for defendants.

W. Otis Higgs, Ratner, Sugarmon, Lucas & Willis, Memphis, Tenn., Jack Greenberg, New York City, for plaintiff-intervenors.

W. J. M. Cody, Memphis, Tenn., amicus curiae.

## OPINION

Before PHILLIPS, Circuit Judge, BROWN, Chief District Judge, and McRAE, District Judge.

ROBERT M. McRAE, Jr., District Judge.

The plaintiff, Dorothy Ann Kirkwood, filed this action in her own behalf and as a class action under Rule 23 of the Federal Rules of Civil Procedure. A Motion to Intervene was filed by nine

additional women, who allege that they are individual members of the class of persons in whose behalf the action was filed by the original plaintiff. The Motion to Intervene was granted before the evidentiary hearing, but the determination of the question whether this may be prosecuted as a class action was reserved. The American Civil Liberties Union was also allowed to intervene as amicus curiae.

The plaintiffs attack the constitutionality of the vagrancy statute of the State of Tennessee, T.C.A. § 39–4701; and the loafing and disorderly conduct ordinances of the City of Memphis, Memphis Code § 22–12 and § 22–24.

The defendants are the Governor and Attorney General of the State of Tennessee; elected and appointed officials of Shelby County, Tennessee, and of the City of Memphis; as well as some individual officers of the Vice Squad of the Memphis Police Department.

The plaintiff and intervenors further contend that the above-named statute and ordinances have been and are being discriminatorily applied against members of the Negro race. They ask a declaration that the statute and ordinances are unconstitutional and seek injunctive relief from prosecution by the defendants under the statute and ordinances.

At the conclusion of the evidentiary hearing this Court denied the application for a preliminary injunction. The evidence did not show bad faith in the actions of the law enforcement officers or any harassment, intimidation, or oppression of the plaintiffs in the exercise of their constitutional rights. Thus the "special circumstances" authorizing injunctive relief against state prosecutions, as set forth in Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L. Ed.2d 182 (1968) and Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965) were not present.

The Court found further at the conclusion of the evidentiary hearing that the requirements of Rule 23(a) and (b), Fed.R.Civ.P., were not present and that this cause may not be maintained as a class action. With regard to the allegation of racial discrimination, we now make a finding of fact upon consideration of all the evidence that there was no discrimination on account of race in the application and enforcement of these vagrancy laws. Therefore, there remains for disposition by this Court the question of the declaratory relief and the question of permanent injunction sought in the complaint.[1]

The testimony of the police officers and officials shows that the officers assigned to the Vice Squad of the Memphis Police Department in the early summer of 1968 became concerned over the problem of prostitution in an area comprising several blocks in the vicinity of the intersection of Hernando and Beale Streets in downtown Memphis. This is a commercial area where there are many restaurants, lounges and rooming houses. The officers testified that at night certain women singly or in small groups could be observed on the streets or sidewalks in unusually brief skirts, even by current miniskirt standards, variously calling to cars containing men, or talking to men in cars which had been stopped, or getting in or out of vehicles being driven by men.

The officers testified that they soon became known on sight by the various women who were repeatedly in the vicinity and therefore arrests for the crime of prostitution in that area could not be obtained. The officers also testified that, after separate consultations with an Assistant City Attorney, an Assistant Attorney General for Shelby County and the City Judge who later served as the Committing Magistrate, the Vice Squad officers who regularly covered the area adopted the practice of stopping the women who were repeated-

---

1. All parties have agreed that the proof received on the application for the preliminary injunction constitutes the entire proof on the application for declaratory relief and the permanent injunction.

ly seen in the area under circumstances set forth above and questioning them about their employment. A warning was given concerning the possibility of arrest for vagrancy if they were seen in that area again under similar circumstances, and the officers made a record in their own note books as to the date of the warning. Thereafter, if the police officers discovered the warned women in the area, they arrested them, took them to the City Jail, and charged each one with violation of the first section of the state vagrancy statute. Subsequent indictments charged the person or persons named therein with "having no apparent means of subsistence, [she] did unlawfully fail, refuse and neglect to apply herself to some honest calling."

The record shows the number of indictments that were returned by the Grand Jury of Shelby County, Tennessee, for charges of vagrancy between January 1, 1968, and October 29, 1968. It reflects that 55 indictments were returned between August 16, 1968, and October 29, 1968. Prior to August 16, in 1968, the Shelby County Grand Jury returned 5 indictments on vagrancy charges, those being in January and February.

Almost all of the vagrancy indictments in the August 16—October 29 period were of persons arrested in the Hernando and Beale Street area. The record reflects that some of the same women were indicted more than once. There is no evidence of arrests for prostitution as a state or city crime in the area during this period.

Candice Stewart testified at the hearing that she had been arrested four times and on each occasion stayed in jail one or two nights before making bond.

The plaintiff, Dorothy Kirkwood, denies involvement in solicitations or prostitution. She testified that she was walking on Hernando Street on the night of September 19, 1968, on the way to meet her boy friend when one of the Vice Squad officers got out of a car. This prompted someone to shout: "Run because he'll arrest you." The plaintiff and others did run. The plaintiff was appre-

hended by one of the officers and taken to the City Police Station where she was charged with violation of the vagrancy statute. The testimony of Officer Jerry D. Williams agrees in most particulars with Dorothy Kirkwood concerning the arrest. However, the officer testified that when he got out of the car the plaintiff Kirkwood was not walking but was standing on the sidewalk talking to two other girls. She was not employed at the time and was living with relatives. She had never been arrested before for vagrancy or prostitution. The arresting officers testified that one of them had questioned the plaintiff Kirkwood within a short period before her arrest concerning her employment and that she was given the customary warning. The plaintiff acknowledges that she was questioned in the area concerning her employment and money in her possession but she denies having been given an arrest warning.

The other named plaintiffs had been arrested in the same neighborhood, some on more than one occasion and under various circumstances. Annie Pearl Bailey, a witness for the plaintiffs, testified that she had been arrested in that neighborhood on three different occasions at night and that she was employed at the time of her first arrest.

The Tennessee vagrancy statute, T.C.A. § 39–4701, is composed of four subsections, each of which is a separate penal clause:

"Vagrancy a misdemeanor.—[1] It shall be a misdemeanor for any person having no apparent means of subsistence to neglect to apply himself to some honest calling; [2] or for any person to be found loitering about gambling houses, [3] or houses of ill fame, [4] or strolling through the country without any visible means of support."

The Supreme Court of Tennessee has interpreted the vagrancy statute of Tennessee and stated its purpose as follows:

"The interpretation that we have placed on the phrase, 'apparent means of subsistence', is in accordance with

what we deem to be the purpose behind this statutory enactment, i. e., the prevention of crime. The word, 'vagrancy', carries with it a connotation of idleness, and, at common law, one of. the aims of the crime of vagrancy was to force the idle to work. 91 C.J.S. Vagrancy § 1, ('Vagrancy, at common law, consists in going about from place to place by a person without visible means of support, who is idle, and who, although able to work for his or her maintenance, refuses to do so, but lives without labor or on the charity of others.'). However, this no longer appears to be the purpose behind this crime as codified; today, the Acts are directed almost exclusively at the prevention of crime—'to prevent crimes which may likely flow from a vagrant's mode of life.' 91 C.J.S. Vagrancy § 1." Fonte v. State, 213 Tenn. 204, 210, 373 S.W.2d 445 (1963).

Vagrancy laws in all states have been the subject of much comment in recent years. See Smith v. Hill, 285 F.Supp. 556, 561 (E.D.N.C.1968) for.a compilation of articles and other works. See also 35 Tenn.L.Rev. 617 (1968).

Mr. Justice Frankfurter, in a dissenting opinion in Winters v. New York, 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840 (1948) referred to vagrancy laws as follows:

"These statutes are in a class by themselves, in view of the familiar abuses to which they are put. * * * Definiteness is designedly avoided so as to allow the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution, although not chargeable with any particular offense. In short, these 'vagrancy statutes' * * * are not fenced in by the text of the statute or by the subject matter so as to give notice of conduct to be avoided."

Various statutes and ordinances having the same purpose and similar, although not identical, wording have been found unconstitutional in recent opinions. Ricks v. District of Columbia, (C.A. D.C. Dec. 23, 1968); Smith v. Hill, *supra;* Baker v. Bindner, 274 F. Supp. 658 (Three-judge Court—W.D.Ky. 1967); Alegata v. Commonwealth, 231 N.E.2d 201 (Mass.1967).

In this case the plaintiffs contend that the section of the statute under which they were indicted is unconstitutional because it is both vague and overbroad. The Supreme Court of the United States in Cameron v. Johnson, *supra,* distinguishes these two constitutional standards. Consequently, we shall consider them separately in this opinion.

▉▉ First, the Court finds that subsection [1] of the Tennessee vagrancy statute is unconstitutionally vague.

"* * * a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

"No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). See also Giaccio v. Pennsylvania, 382 U.S. 399, 402, 403, 86 S.Ct. 518, 15 L. Ed.2d 447 (1966) and Baker v. Bindner, *supra,* and Roberts v. Clement, 252 F. Supp. 835 (E.D.Tenn.1966).

▉ Legislation of the type that employs ambiguous phrases such as *apparent means of subsistence* and *honest calling,* "does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat." Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L. Ed.2d 176 (1965).

The vagueness of subsection [1] of T.C.A. § 39–4701 becomes even more evident when one examines the testimony given by the arresting officers and other

officers who were on duty in the area in which these arrests were made. The officers gave different definitions of *apparent means of subsistence* and *honest calling*. A penal law which creates such a diversity of opinion on the part of those charged with its enforcement is unconstitutional. As was stated by the Court of Appeals for the District of Columbia, " 'Vague laws in any area suffer a constitutional infirmity,' and what the Constitution demands of other laws it exacts imperatively of those who undertake to punish vagrancy." Ricks v. District of Columbia, *supra,* quoting Ashton v. Kentucky, 384 U.S. 195, 200, 86 S.Ct. 1407, 1410, 16 L.Ed.2d 469 (1966).

■■ In addition to the lack of clarity and precision and therefore the vagueness of subsection [1] of T.C.A. § 39–4701, it is overbroad and thus infringes on constitutionally protected rights. " '[A] governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms * * *.' " Cameron v. Johnson, *supra,* 390 U.S. at 617, 88 S.Ct. at 1338, 20 L.Ed.2d 182, quoting Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); see also Keyishian v. Board of Regents, 385 U.S. 589, 609, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 508–509, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963). The fact that the motive or purpose of the vagrancy statute is to prevent another and separate crime of prostitution does not justify the possible inclusion of those persons not on the street for criminal purposes.[2]

■ Subsection [1] of T.C.A. § 39–4701, namely, it "shall be a misdemeanor for any person having no apparent means of subsistence to neglect to apply himself to some honest calling", is therefore found by this Court to be unconstitutional because it is both vague and overbroad.

This Court has not ruled upon the question of the constitutionality of Subsections [2], [3] and [4] of T.C.A. § 39–4701 because none of the plaintiffs has been arrested under them. Although the issues concerning city ordinances which are attacked in the complaint were severed by the single judge to whom the case was assigned before the statutory Three-judge Court was empaneled, the undisputed proof shows that none of the plaintiffs has been arrested or charged with the violation of any of the city ordinances.

■ The plaintiff and plaintiff-intervenors request not only a declaratory judgment, but also an injunction against their prosecution. This Court finds that the criteria for declaratory relief that Subsection [1] of T.C.A. § 39–4701 is unconstitutional are present. However, the "special circumstances" necessary for injunctive relief are not. Dombrowski v. Pfister, *supra,* and Cameron v. Johnson, *supra.* Therefore, the prayer for injunctive relief is denied.

---

2. We indicate no opinion whether a state can constitutionally make it a crime for

a person to go upon the street even when refusing to be employed.