No. 24189.

CHARLES J. ARNOLD, A/K/A MARK MOORE *v.* THE CITY AND
COUNTY OF DENVER.
(464 P.2d 515)

Decided January 12, 1970.     Rehearing denied February 24, 1970.

WILLIAM F. REYNARD, WILLIAM F. SCHOEBERLEIN, for petitioner.

MAX P. ZALL, LEE G. RALLIS, ROBERT D. DOWLER, for respondent.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

THE petitioner was the defendant in the trial court and will be so referred to. He was convicted in the county court under a portion of Denver's vagrancy ordinance. After the conviction was affirmed by the superior court, he sought — and we granted — certiorari for a con-

sideration of constitutionality of the applicable section of the ordinance. We find it unconstitutional.

At or about 4:00 a.m. on September 5, 1967, a Denver city policeman was patrolling a high crime rate area. He was contacted by an individual who informed him that defendant had been observed "trying doors" to the various business establishments as he walked along Colfax Avenue. The officer sought to intercept the defendant and, as his police car approached, the defendant seemed to change directions abruptly. The officer then drove around the block until he could again observe the defendant. The defendant appeared to be looking into automobiles as he walked along the street, and he seemed to slow his pace as he came to each vehicle. As the officer attempted again to intercept the defendant, the latter again changed directions.

The officer then overtook defendant and attempted to question him. To the officer the defendant's eyes appeared glassy and his pupils dilated. The defendant revealed that he was a licensed minister of the gospel and gave his home address. He refused, however, to state his name, insisting that he had no obligation to do so. The defendant was taken to the police station and was there held incommunicado until 7:40 a.m., at which time he was advised that the only reason for his detention was that he refused to state his name. He then stated his name, and promptly thereafter he was charged with vagrancy.

We granted certiorari in this matter to determine whether recent decisions, including *Goldman v. Knecht*, 295 F. Supp. 897 might persuade us to overrule our *Dominguez v. City and County of Denver*, 147 Colo. 233, 363 P.2d 661. *Dominguez*, decided in 1961, held that the ordinance under which the present defendant was charged was not violative of due process. *Goldman*, decided by a 3-judge federal district court in Colorado, declared Colorado's vagrancy statute (C.R.S. 1963, 40-8-19) unconstitutional as being violative of both the due process and equal protection clauses of the Fourteenth Amendment.

The statute involved in *Goldman* and the portion of the ordinance here involved, with comparable provisions placed in approximate juxtaposition, are as follows:

*Statute*

"Any person able to work and support himself in some honest and respectable calling, who shall be found loitering or strolling about, frequenting public places, or where liquor is sold, begging or leading an idle, immoral or profligate course of life, or not having any visible means of support, shall be deemed a vagrant, . . ." C.R.S. 1963, 40-8-19.

*Ordinance*

".1. Vagrancy. It shall be unlawful for any person to have the status or condition of or to be a vagrant in the City and County of Denver. The following persons shall be deemed vagrants: * * *

".1-7. Any person who wanders about the streets, alleys, or other public ways or places, or who is found abroad at late or unusual hours in the night without any visible or lawful business and not giving a satisfactory account of himself." Section 824 Revised Municipal Code of City and County of Denver, Series of 1950 as amended.

*Goldman* held substantially the following: (1) that the terms "loitering or strolling about," "frequenting public places, or where liquor is sold," "begging or leading an idle, immoral, or profligate course of life," and "not having any visible means of support" are unconstitutionally vague; (2) that the statute discriminates between classes of persons in violation of the equal protection clause; and (3) that it unconstitutionally makes status or condition (as distinct from behavior) a crime. In *Dominguez, supra,* this court construed the present ordinance in terms of status. It was there stated, "As the ordinance under study expressly recognizes, vagrancy is a crime of condition or status."

If condition or status were all that is involved in the

only portion of the ordinance under consideration, we would regard *Goldman* as persuasive as to the unconstitutionality of the ordinance under the Fourteenth Amendment of the United States Constitution. See also *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758. It will be observed, however, that the ordinance involves *behavior* as well as *status.* The duty under the ordinance for a person to give "a satisfactory account of himself" is a matter of behavior. *Goldman* recognized a possibility of constitutionality if action of a person is coupled with status, and in the opinion it was stated as follows:

"Conceivably, loitering or strolling on public property which obstructs the orderly government process would be offensive, and conceivably loitering and strolling about, when coupled with preparation to commit a criminal offense or with interference with the activities of others, might be within the scope of legislative prohibition, but the statute does not require the loitering or strolling to be associated with any other conduct."

Since the failure to give a good account of himself is a factor in the crime charged against the defendant, Goldman is not persuasive upon us to declare the ordinance unconstitutional, and we must look beyond *Goldman* in connection with our determination.

Although several cases appear to be tangentially related, we know of only one decision precisely in point as to the constitutionality of a statute or ordinance having as an element in a crime the failure of a person to give a satisfactory account of himself. This is *Ricks v. District of Columbia,* 414 F.2d 1097. There the court, in declaring a similar ordinance unconstitutional, stated as follows: "We deem the 'good account' provision much too loose to satisfy constitutional requirements. It takes but little reflection to bring to mind almost immediately the magnitude of the guesswork its application commonly entails." We agree with this conclusion and, therefore, overrule *Dominguez.*

In view of the attendant circumstances, we have difficulty in finding sympathy for the petitioner's refusal to identify himself to the police officer. Considering the information that the officer had received about "testing doors" and after observing the petitioner peering into automobiles and his evasive tactics, the officer would have been derelict in his duty if he had not made some investigation. That fact, however, does not cause the indefinitude of an ordinance to become constitutional. The ordinance permits varied applications to the same act of a person. One officer or court might regard an individual as not giving a good account of himself while others could reach a contrary conclusion. Further, it is not sufficiently explicit to advise persons of what conduct will place them in violation of the ordinance. *Memorial Trusts v. Beery*, 144 Colo. 448, 356 P.2d 884. The term "giving a satisfactory account of himself" is simply too overbroad and vague to meet constitutional requirements. We declare the portion of the ordinance under consideration to be unconstitutional. Other portions of the vagrancy ordinance are not before us and no opinion as to their validity is expressed.

The city urges forcefully and quite compellingly that this portion of the ordinance is necessary to "nip crime in the bud." It is intimated that wisdom is cast to the winds if a police officer cannot restrain for indentification a person who acts suspiciously at a late hour and thereafter refuses to identify himself. The *Dominguez* opinion, with at least equal force, pointed out the need for such an ordinance. However, we cannot lose sight of the fact that no matter how necessary to law enforcement a legislative act may be, if it materially infringes upon personal liberties guaranteed by the constitution, then that legislation must fall. Grim as it may be, if effective law enforcement must be dependant upon unconstitutional statutes, then the choice of the way ahead is for the people to act or fail to act under the amendatory processes of the constitution.

The judgment of the superior court is reversed and the cause remanded with instructions that it direct the county court to dismiss the complaint.

MR. JUSTICE HODGES dissents.