Gary J. HAYES, on behalf of himself and all others similarly situated, Petitioner,

v.

MUNICIPAL COURT OF OKLAHOMA CITY, Philip Lambert, Chief Presiding Judge, Respondent.

No. A–16803.

Court of Criminal Appeals of Oklahoma.

July 28, 1971.

a trial court is without jurisdiction to entertain a particular prosecution. Matthews v. Powers, Okl.Cr., 425 P.2d 479 (1967). Unconstitutionality of a criminal statute constitutes a jurisdictional failure in the trial court entertaining a prosecution for an alleged violation of a challenged statute. Ex parte Siebold, 100 U.S. 371, 25 L.Ed. 717 (1879). Further, we find the uniform administration of criminal justice requires entertaining this proceeding.[1]

Oklahoma City has made it a crime to loiter. In relevant part the ordinance, Title 9, Chapter 8, Section 9.8.02, reads as follows:

"It shall be unlawful and an offense, between the hours of 12 o'clock midnight and the sunrising hour thereafter, for any person to loiter or wander aimlessly upon ar [sic] about the streets, alleys, or other public highways, or parks of said city, or upon private lots, around vacant or occupied buildings or railways property, or yards, who has not a lawful reason for being at such place at such time, or to sleep in or about such place, or within any place, or upon any bench or chair provided for public accommodation, without lawful authority or permission to do so."

The import of this provision is that it is unlawful between midnight and sunrise to loiter or wander aimlessly about the streets or parks without a lawful reason. The ordinance also makes it a crime for any person to loiter about the streets at any time without a local habitation and honest business or employment.[2] And, further, it is

Thomas Hoffman, Legal Aid Society, Oklahoma City, for petitioner.

Roy H. Semtner, Municipal Counselor, Oklahoma City, Merle K. Garrette, Legal Intern, for respondent.

NIX, Judge:

This is an original proceeding for a writ of prohibition. Petitioner was arrested on July 8, 1971, at 3:00 o'clock a. m. and jailed for loitering in violation of Oklahoma City ordinance. Petitioner contends the anti-loitering ordinance is unconstitutional on its face as it denies due process and equal protection of the law because it is vague and overbroad, allows arrest on suspicion, and unlawfully limits freedom of movement, assembly and association.

We assumed jurisdiction as the writ of prohibition is available in instances where

---

1. The Municipal Court of Oklahoma City has previously upheld the vagrancy-loitering ordinances (Oklahoma City v. Jack Gordon, Case No. 10041, Feb. 20, 1970).

    Elsewhere, the City of Tulsa, Oklahoma, vagrancy-loitering ordinance has been held invalid by the District Court of Tulsa County (State v. Kohlmeger, Case No. CRM–70–630, August 28, 1970) while upheld as valid by the Municipal Court of the City of Tulsa (City of Tulsa v. Whipple, Case No. 116063, January 11, 1970).

2. Section 9.8.01: "The following persons are vagrants within the meaning of this section, and it shall be unlawful and an offense for any person to be a vagrant within said city, which offense shall consist of being

    "First. An idle person who lives without means, or who has no visible support and makes no exertion to obtain a livelihood by honest employment.

    "Second. Any person who strolls or loiters idly about the streets of said city, having no local habitation and no honest business or employment."

a crime for anyone under age 16 to loiter or loaf on the streets between 9:00 o'clock p. m. and 6:00 o'clock a. m.[3]

The ordinances contain no further guides or definitions of the prohibited conduct. "Loiter" has been defined elsewhere as meaning "to stand around or move slowly about; to spend time idly; to saunter; to delay; to linger; to lag behind." Black's Law Dictionary. Rainbolt v. State, Okl. Cr., 97 Okl.Cr. 164, 260 P.2d 426 (1953). As to the meaning of such terms, one immediately questions lag behind what? Is only pedestrian activity included? "Slowly" and "saunter" will vary with the person, time and place. Must the old and infirm move at the same speed as young able-bodied men? Should sidewalks be posted for minimum pedestrian speed? Would running or jogging be permissible? It is readily apparent the terms escape uniform meaning and a search for definitional certainty becomes futile.

■ It is fundamental that statutes creating criminal offenses must be drawn in language sufficient to apprise the public of exactly what conduct is forbidden. A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." Lanzetta v. New Jersey, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). Legislation which is ambiguous, imprecise and vague "does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat." Shuttlesworth v. City of Birmingham, 382 U.S. 87, 90, 86 S.Ct. 211, 213, 15 L.Ed.2d 176 (1965).

The clear weight of modern authority holds that legislation which makes it a crime to loiter, wander, stroll, or idle is unconstitutionally vague as failing to give fair notice of what is and what is not prohibited by their terms. As meaning is obscure they lack sufficient definiteness to provide an ascertainable standard for the determination of guilt. Thus such statutes which fail to give fair notice of what they prohibit are simply not valid laws.

The District of Columbia anti-loitering statute was held unconstitutionally vague since there were "widely differing interpretations of 'loitering,' ranging from the ostensibly innocent to the potentially criminal." Ricks v. District of Columbia, 134 U.S.App.D.C. 201, 414 F.2d 1097 (1968). The New York statute forbidding anyone to "loiter about any street" was held to be constitutionally infirm because it failed "to point up the prohibited act, either actual or threatened," and thus did not differentiate "conduct calculated to harm and that which is essentially innocent." People v. Diaz, 4 N.Y.2d 469, 176 N.Y.S.2d 313, 151 N.E.2d 871 (1958).

In Goldman v. Knecht, 295 F.Supp. 897 (Colo.1969), in holding the Colorado vagrancy statute unconstitutional which prohibited loitering and strolling, the court stated:

"Words such as loitering or strolling, frequenting public places, or where liquor is sold, etc., do not lend themselves to a limiting construction. The uncertainty and ambiguity persist regardless of the construction. The circumstances which will invariably give rise to arrest and prosecution are left to the discretion of the individual enforcing officer. Thus the manner of enforcement will always depend on the officer's subjective reactions to the conduct which he observes." 295 F.Supp. at 901–902.

---

3. Section 9.8.03: "It shall be unlawful and an offense for any person under sixteen years of age to loaf or loiter on the streets or alleys or other public places or commons in the city between nine o'clock P.M. and six o'clock A.M."

In Hawaii v. Anduha, 48 F.2d 171 (9th Cir., 1931), which held unconstitutional a statute making it a misdemeanor to loiter, loaf, or idle on public streets, the court said:

"These words have no sinister meaning and imply no wrongdoing or misconduct on the part of those engaged in the prohibited practices.

" * * *

"It is almost needless to say that such an act cannot be enforced, and that no attempt will be made to enforce it, indiscriminately. It may be enforced against those poor hapless ones who are unable to assert or protect their rights, but as to all others it will remain a dead letter. It may be enforced to suppress one class of idlers in order to make a place more attractive to other idlers of a more desirable class. In any view we take of it, the act trenches upon the inalienable rights of the citizen to do what he will and when he will, so long as his course of conduct is not inimicable to himself or to the general public of which he is a part." 48 F.2d at 173.

Likewise, the word "wander" is lacking in certainty as the Hawaii Supreme Court noted in State v. Grahovac, 480 P.2d 148 (Hawaii, 1971), declaring its vagrancy statute unconstitutional:

"The word 'wanders' delineates no ambit of conduct susceptible to agreed understanding. Whether any and all walking is included in 'wandering' is a definitional mystery that subjects a pedestrian to the unbridled discretion of an officer whose standard for law enforcement is equally as nebulous." 480 P.2d at 153.

These decisions and others undergird our conclusion that "loiter or wander" as used in the Oklahoma City ordinance is unconstitutionally vague.[4]

Nor is the vagueness of "loiter and wander" salvaged when coupled with the proviso to give "a lawful reason for being at such place at such time" since this language is equally vague and uncertain in meaning as well as unduly placing the burden of proof on a pedestrian to demonstrate that he is not engaged in criminal activity. Indeed, this aspect of the ordinance is even more offensive. As to its vagueness, what constitutes a "lawful reason?" Must one demonstrate he is engaged in occupational employment, or will a social visit or mere walk without destination qualify? Here again, whose standard determines the lawfulness of the reason? The officer, the court, the prosecutor, or the citizen? Not only is there no standard for the officer, but also the citizen has no way of knowing until after his arrest if he had a lawful reason for being on the street. To be safe, should one get police permission to be on the streets?

Holding the city ordinance requirement for a loiterer to "give a satisfactory account of himself" vague and overbroad, the court in Baker v. Bindner, 274 F.Supp. 658 (W.D.Kentucky 1967), said:

"We do not believe that the requirement that an offender 'give a satisfactory account of himself' passes constitutional tests. It places sole determination in the discretion of the policeman on the beat. The standard of 'satisfactory account' is not certain, for what may be satisfactory to one may be unsatisfactory to another, and the meaning of the word 'satisfactory' itself is not susceptible of any standard of exactness. What kind of 'satisfactory'? Legal or moral satisfaction? * * * Does the mere fact that one cannot give a satisfactory account of himself to the pleasure of the inquiring officer make him guilty of an unspeci-

4. Decisions other than those cited in body of opinion also holding anti-loitering prohibitions unconstitutionally vague:
City of Akron v. Effland, 112 Ohio App. 15, 174 N.E.2d 285 (1960)
State v. Starks, 51 Wisc.2d 256, 186 N. W.2d 245 (1971)

State v. Caez, 81 N.J.Super. 315, 195 A. 2d 496 (1963)
Seattle v. Drew, 70 Wash.2d 405, 423 P. 2d 522 (1967)
Scott v. District Attorney, 309 F.Supp. 833 (E.D.La.1970)

fied crime? Such unbridled discretion cannot be constitutionally vested in the policeman or the court." 274 F.Supp. at 664.

In Ricks v. District of Columbia, *supra*, where the unconstitutional statute made it an offense if a loiterer did not give a "good account," the court held:

"We deem the 'good account' provision much too loose to satisfy constitutional requirements. It takes but little reflection to bring to mind almost immediately the magnitude of the guesswork its application commonly entails." 414 F.2d at 1104–1105.

In Arnold v. City and County of Denver, 464 P.2d 515 (Colorado, 1970), the Colorado Supreme Court held unconstitutionally vague an ordinance making it a criminal offense for one to wander about public ways without giving a "satisfactory account" of himself. Finding the ordinance overbroad and vague the Court said:

"One officer or court might regard an individual as not giving a good account of himself while others could reach a contrary conclusion. Further, it is not sufficiently explicit to advise persons of what conduct will place them in violation of the ordinance. Memorial Trusts v. Beery, 144 Colo. 448, 356 P.2d 884. The term 'giving a satisfactory account of himself' is simply too overbroad and vague to meet constitutional requirements." 464 P.2d at 517.

In Alegata v. Commonwealth, 353 Mass. 287, 231 N.E.2d 201 (1967), the Massachusetts Supreme Judicial Court held unconstitutionally vague a statute making it a crime for persons to be abroad in the nighttime without giving a "satisfactory account of themselves." The Court said:

"Being abroad in the nighttime no more imports sinister conduct than does the act of sauntering and loitering proscribed by the ordinance held to be invalid in Commonwealth v. Carpenter, 325 Mass. 519, 91 N.E.2d 666. Yet the statute literally applies to *all* persons, however innocent their conduct may be, who are abroad at night, arouse the *suspicion* of a police officer, and, subsequently, fail *to give a satisfactory account*. It is hard to see how suspicion of unlawful design or failure to give a satisfactory account, without more, can transform otherwise innocent behavior into a crime." 231 N. E.2d at 204.

Nor does the ban on loitering only between midnight and sunrise make the ordinance valid. Similar nighttime prohibitions on loitering have been found invalid. City of Portland v. James, 251 Or. 8, 444 P.2d 554 (1968). Decker v. Fillis, 306 F.Supp. 613 (C.D.Utah, 1969). Arnold v. City and County of Denver, *supra*. Alegata v. Commonwealth, *supra*. "It is beyond the reach of a penal ordinance to prohibit people from merely being on the streets 'habitually' or even at late 'or unusual' hours." Gordon v. Schiro, 310 F.Supp. 884, at 887 (E.D. La.1970).

■ In addition to the lack of clarity and precision, and therefore, vagueness of the ordinance, it suffers from over-broadness and thus infringes on constitutionally protected rights. "Because of its vague language, it may be used to 'criminalize' conduct which is beyond the legitimate reach of the state's police power. That is, it punishes conduct of an individual which in no way impinges on the rights or interests of others." Lazarus v. Faircloth, 301 F. Supp. 266, at 272 (S.D.Florida, 1969). Even if a statute has the necessary clarity and precision it may be void for overbreadth when it offends the constitutional principle that "a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms." Zwickler v. Koota, 389 U.S. 241, 250, 88 S.Ct. 391, 396, 19 L.Ed.2d 444 (1967). Cameron v. Johnson, 390 U.S. 611, 617, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968). Kirkwood v. Ellington, 298 F.Supp. 461, 466 (W.D.Tennessee, 1969).

■ In that it prohibits loitering, wandering, or strolling about the streets, the

Oklahoma City ordinance is unconstitutionally overbroad as it invades protected freedoms and punishes conduct which in no way impinges on the rights or interests of others. Loitering is in and of itself neither immoral or anti-social. A prohibition against loitering is constitutionally infirm because it does not differentiate "conduct calculated to harm and that which is essentially innocent." Ricks v. District of Columbia, *supra*, 414 F.2d at 1104.

In Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426 (1967), the New York vagrancy statute which made it a crime to be without visible means of support was held unconstitutional because as the Court held:

> "[The vagrancy statute] violates due process and constitutes an overreaching of the proper limitations of the police power in that it unreasonably makes criminal and provides punishment for conduct (if we can call *idleness* conduct) of an individual which in no way impinges on the rights or interests of others and which has in no way been demonstrated to have anything more than the most tenuous connection with prevention of crime and preservation of the public order * * *, other than, perhaps, as a means of harassing, punishing or apprehending suspected criminals in an unconstitutional fashion." 282 N.Y.S.2d at 742, 229 N.E.2d at 428.

In voiding a statute making it a crime to loiter, loaf, or be idle on a public street, the Court in Hawaii v. Anduha, *supra*, said:

> "Personal liberty, which is guarantied [sic] to every citizen under our constitution and laws, consists of the right of locomotion—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there they will be protected under the law, not only in their persons, but in their safe conduct." 48 F.2d at 172.

People have the constitutionally guaranteed freedom of movement and the right of privacy free from unnecessary police interference.[5] Movement is essential to freedom.[6] There can be no limits on a person's freedom to move interstate, even if he is indigent or undesirable.[7] Likewise, people must be allowed free locomotion upon the streets and public places.[8] Public streets are for the use of the public regardless of their status in society. People have the right to be about and move on public streets regardless of when or how fast they walk. The denial of the freedom of movement about public streets has been a key factor in decisions holding anti-loitering statutes unconstitutional.[9]

In City of Portland v. James, *supra*, the Oregon Supreme Court voided a city ordinance making it a crime to roam the streets between 1:00 o'clock and 5:00 o'clock a. m. without a lawful purpose. In deference to freedom of movement, privacy and human dignity, the Court found the ordinance unconstitutionally permitted arrests on suspicion. The Court said:

> "The principle evil of such vague legislation is that it invites arbitrary and discriminatory enforcement. The police officer's suspicion that the suspect does not have a 'lawful purpose' is the only stand-

5. Aptheker v. Secretary, 378 U.S. 500, 505–506, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)

6. Baker v. Bindner, *supra*, 274 F.Supp. at 662

7. Edwards v. People, 314 U.S. 160, 62 S.Ct. 164, 86 L.Ed. 119 (1941)

8. Hague v. CIO, 101 F.2d 774, at 780 (3d Cir. 1939)

9. Smith v. Hill, *supra*, 285 F.Supp. at 558. Decker v. Fillis, *supra*, 306 F. Supp. at 617. Hawaii v. Anduha, *supra*, 48 F.2d at 173. City of Portland v. James, *supra*, 444 P.2d at 557.

ard prescribed for arrest and conviction." 444 P.2d at 557.

Similar legislation was condemned in Smith v. Hill, 285 F.Supp. 556, (E.D., N.C. 1968), as permitting "dictatorial control over the streets and public places." It "furnishes a convenient tool for 'harsh and discriminatory enforcement by prosecuting officials against particular groups deemed to merit their displeasure.' " 285 F.Supp. at 562. Such vague and overbroad legislation denies equal protection in that it "makes selective enforcement virtually inevitable. Certain sub-classes of individuals within the general vagrancy statutes are certain to become the targets of selective enforcement." Goldman v. Knecht, *supra*, 295 F.Supp. at 907. Anti-loitering laws are frequently invoked to harass suspicious persons, undesirables, the poor, and minority groups where no crime has been committed. Thus, we have a situation like that in Shuttlesworth v. City of Birmingham, *supra*:

> " * * * this ordinance says that a person may stand on a public sidewalk in Birmingham only at the whim of any police officer of that city. The constitutional vice of so broad a provision needs no demonstration. It 'does not provide for government by clearly defined laws, but rather for government by the moment-to-moment opinions of a policeman on his beat.' " 382 U.S. at 90, 86 S.Ct. at 213.

We find little merit to the City's argument that the present loitering prohibition is necessary to effective police regulation of the public. It is "difficult to reconcile with traditional American law the jailing of persons by the courts because of anticipated but as yet uncommitted crimes." Williamson v. United States, 184 F.2d 280, 282–283 (2nd Cir. 1950). Effective law enforcement does not require that the citizen on the streets is at the "mercy of the officers' whim or caprice." Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879.

There is nothing to prevent an officer from investigating suspicious circumstances indicating criminal activity. But he may not arrest on mere suspicion or remove those he deems undesirable from the street. No matter how useful legislation may be, "if it materially infringes upon personal liberties guaranteed by the constitution, then that legislation must fall." Arnold v. City and County of Denver, *supra*, 464 P.2d at 517.

To forbid people from being on public streets as a preventive measure rings of a totalitarian police state operated for the efficiency of the government and not in the interest of a free people. All citizens are justly concerned about crime. But, that concern must take rational expression and not become a mindless fear that erodes the rights of a free people.

The United States Supreme Court recently held in Coates v. Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217 (1971) :

> "The city is free to prevent people from blocking sidewalks, obstructing traffic, littering streets, committing assaults, or engaging in countless other forms of antisocial conduct. It can do so through the enactment of enforcement of ordinances directed with reasonable specificity toward the conduct to be prohibited. [Citations omitted.] It cannot constitutionally do so through the enactment and enforcement of an ordinance whose violation may entirely depend upon whether or not a policeman is annoyed."

Since a charge of loitering could also be a violation under Sections 9.8.01 or 9.8.03,[10] we have considered those sections and find they are also unconstitutional for reasons set forth above. Section 9.8.01(1) and (2) makes it a crime for a person to be idle or stroll or loiter about the streets "having no local habitation and no honest business or employment" at any time of day. This section is thus additionally void as it makes a crime out of one's status of

---

10. See footnotes 2 and 3.

poverty or unemployment. Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962). Employment, particularly honest employment, is laudable, but not necessary before one has use of the streets. Nor is it a crime to have no local habitation.

In holding an ordinance unconstitutional which prohibited persons from being in public places if they had no visible means of support the court in Parker v. Municipal Judge, 83 Nev. 214, 427 P.2d 642, 644 (1967) held: "It simply is not a crime to be unemployed, without funds, and in a public place." Such terms as "visible means of support" and "honest calling" are unconstitutionally vague. Kirkwood v. Ellington, *supra*, 298 F.Supp., at 465. As noted in Decker v. Fillis, supra, 306 F.Supp., at 617, such restrictions would "penalize economic condition or status, render mere lawful presence on the streets or in other public places in the absence of 'business' there a crime, and certainly chill the liberty of lawful movement, presence and physical status by such an overbreadth of prohibition as to literally cover almost any person loitering or even window shopping on the streets, particularly in the nighttime."

Section 9.8.03 makes it a crime for any person under 16 years of age to loaf or loiter on the streets between 9:00 o'clock p. m. and 6:00 a. m. This provision likewise suffers from vagueness and overbreadth, and furthermore constitutes an invalid discrimination. An ordinance which prohibited anyone under 21 years of age from being on the streets after 9:00 o'clock p. m. was held unreasonable, illegal and void in Ex parte McCarver, 39 Tex.Cr.R. 448, 46 S.W. 936 (1898). The Court held:

"* * * it is an undue invasion of the personal liberty of the citizen, as the boy or girl * * * have the same rights of ingress and egress that citizens of mature years enjoy."

Also, Alves v. Justice Court, 148 Cal.App. 2d 419, 306 P.2d 601, 605 (1957), held that a city ordinance making it unlawful for minors under 17 years to be on public streets and parks unconstitutional as an "unlawful invasion of personal rights and liberties."

We, therefore, hold that the Oklahoma City ordinance provisions which make it a crime for a person between midnight and sunrise to loiter or wander about the streets or parks without a lawful reason (§ 9.8.02), and a crime for any person under 16 years of age to loaf or loiter on the streets between 9 o'clock p. m. and 6 o'clock a. m. (§ 9.8.03), and a crime for any person to be idle or stroll or loiter about the streets with no local habitation and no honest employment (§ 9.8.01), are unconstitutionally vague and overbroad in violation of the due process and equal protection requirements of the Oklahoma and United States Constitutions.

Accordingly, the ordinance is null and void and will not support the prosecution herein which must be dismissed and petitioner discharged. Writ granted.

BRETT, J., concurs.