## TERRITORY OF HAWAII v. ANDUHA.
### No. 6257.

Circuit Court of Appeals, Ninth Circuit.
March 23, 1931.

H. R. Hewitt, Atty. Gen. and E. R. McGhee, Third Deputy Atty. Gen., for the Territory.

Before RUDKIN, WILBUR, and SAWTELLE, Circuit Judges.

RUDKIN, Circuit Judge.

This appeal involves the validity of a statute of the territory of Hawaii providing that any person who shall habitually loaf, loiter, and/or idle upon any public street or highway or in any public place shall be guilty of a misdemeanor, and punished as therein provided. Session Laws 1929, Act 256, § 1. The Supreme Court of the territory affirmed a judgment of the circuit court declaring the statute unconstitutional and void. The appellee has submitted the case to this court on the opinion of the court below, without brief or argument, but a brief has been submitted by the Attorney General on behalf of the territory.

So far as we can find, there is but little direct authority bearing upon the question thus presented. Nearly all of the cases cited by the appellant have to do with the police power in general, and are without special application to the statute before the court. Thus the question involved in Re Opinions of the Justices, 251 Mass. 569, 147 N. E. 681, was automobile insurance and the discussion of the right to use streets and highways was merely incidental to that question.

In Commonwealth v. Challis, 8 Pa. Super. Ct. 130, an ordinance was upheld making it an offense to obstruct a street by idly standing, loafing, or congregating thereon. The right to prohibit the obstruction of a public street is not open to question, but some of the language employed by the court would seem to go beyond the question then under consideration.

The ordinance involved in Taylor v. City of Sandersville, 118 Ga. 63, 44 S. E. 845, prohibited idling, loitering, or loafing upon the streets of the city, but the court expressly refused to pass upon its validity because the question had not been raised in the lower courts.

On the other hand, in Pinkerton v. Verberg, 78 Mich. 573, 44 N. W. 579, 582, 7 L. R. A. 507, 18 Am. St. Rep. 473, cited in the opinion of the court below, it was said:

"Personal liberty, which is guarantied to every citizen under our constitution and laws, consists of the right of locomotion—to go where one pleases, and when, and to do that which may lead to one's business or pleasure, only so far restrained as the rights of others may make it necessary for the welfare of all other citizens. One may travel along the public highways or in public places; and while conducting themselves in a decent and orderly manner, disturbing no other, and interfering with the rights of no other citizens, there they will be protected under the law, not only in their persons, but in their safe conduct. The constitution and the laws are framed for the public good, and the protection of all citizens, from the highest to the lowest; and no one may be restrained of his liberty, unless he has transgressed some law. Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our constitution guaranties. These are rights which existed long before our constitution, and we have taken just pride in their maintenance, making them a part of the fundamental law of the land."

But here again the principal question involved was the right to make an arrest without a warrant.

In City of St. Louis v. Gloner, 210 Mo. 502, 109 S. W. 30, 32, 15 L. R. A. (N. S.) 973, 124 Am. St. Rep. 750, the court declared void a city ordinance prohibiting any person from lounging, standing, or loafing upon the street corners or other public places in the day or night time, saying, among other things:

"It is, however, said for the city that 'John Smith, a member of the public, has no right for his own private purposes, whatever they may be, to take his stand for a period of two hours every day upon a particular portion of the public street in a great and populous city.' That he has such right there can, in our opinion, be no question, providing he conducts himself in a peaceful, orderly manner, disturbs no one, and commits no overt act." See, also, In re McCue, 7 Cal. App. 765, 96 P. 110.

In sustaining the demurrer in this case, the trial judge said:

"For all that appears in the complaint filed against this defendant under this act, the defendant may well have been consistently in the pursuit of health or other innocent activity at all the times mentioned in the complaint. There is nothing in the charge itself nor in the wording of the act under which the charge is brought which would advise this defendant or any defendant at what point an innocent use of public places had become connected with any criminal purpose or activity. There is nothing in the charge or in the attempted definition of an offense in the act which would enable a resident to know the dividing line between innocent idleness and criminal idleness in a public place. This discrimination is delegated to the whim of every police officer who desires to interfere with the personal liberty of a resident within the Territory."

In affirming the judgment, the Supreme Court said:

"All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent.

Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them, having no other occupation, habitually but harmlessly idle or loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loiter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape

they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed. Is the legislature empowered to declare them lawbreakers? Children, who have reached the age of legal responsibility, on their way to and from school habitually loiter along the sidewalks. If the statute is constitutional they are in danger of imprisonment even though their manner of using the sidewalks is without probable injury or inconvenience to any one."

In these views we fully concur. The different terms used in the statute have been thus authoritatively defined:

Idle: To spend in idleness; waste; with away, as, to idle away an hour; to spend or lose time in inaction or without employment.

Loiter: To consume (time) idly; with away, as, to loiter away the hours; to linger idly along the way; to spend time idly; to be dilatory; delay; to travel indolently with frequent intermissions.

Loaf: To spend idly; with away, as loafing one's time away; to idle away the time; lounge.

■ These words have no sinister meaning and imply no wrongdoing or misconduct on the part of those engaged in the prohibited practices. It is a matter of common knowledge, of which we must take judicial cognizance, that the majority of mankind spend a goodly part of their waking hours in whiling or idling the time away, and much of that time is spent on public streets and highways and in public places. Daylight saving laws have been enacted in order that those employed during the day may have more time at their disposal for recreation and pleasure; more time to idle, loiter, and loaf. On our streets daily are seen hundreds and even thousands of idle men who have nothing to do and no place to go, through no fault of their own, and are we to add to their misfortunes by declaring them lawbreakers and criminals? The public press informs us that three million tourists are expected to visit California during the present year, and what will they come for and what will they do after their arrival but idle and loiter on the public streets and highways and in public places, because they will not be permitted to invade private property. In short, the multitudes who seek rest, recreation, and pleasure at summer and winter resorts and at sea shores are at best little more than idlers or loiterers.

As already stated, the right of the territory, or one of its municipalities, to legislate against the obstruction of public streets and highways, whether caused by idlers or others, is not open to question. But a regulation as broad as this is wholly unnecessary for that purpose. Furthermore, the statute is as broad as the limits of the territory. It is not confined to congested streets or highways, but extends to every public highway and byway in the territory, whether traveled much or little. It even extends to public parks, created for the express purpose of affording a place of recreation in which the public may idle and loiter to their hearts content. In the dissenting opinion it is said that the part of the statute relating to public places may be rejected without affecting the remainder. But, be it so, the act cannot be limited to some streets and highways and rejected as to others.

It is almost needless to say that such an act cannot be enforced, and that no attempt will be made to enforce it, indiscriminately. It may be enforced against those poor hapless ones who are unable to assert or protect their rights, but as to all others it will remain a dead letter. It may be enforced to suppress one class of idlers in order to make a place more attractive to other idlers of a more desirable class. In any view we take of it, the act trenches upon the inalienable rights of the citizen to do what he will and when he will, so long as his course of conduct is not inimicable to himself or to the general public of which he is a part.

The judgment is affirmed.