Matthew B. LAZARUS, Plaintiff,

v.

Earl FAIRCLOTH, Attorney General of the State of Florida, Paul Denham, Acting Chief of Police of the City of Miami, Florida, and William Porter, Prosecuting Attorney, City of Miami Municipal Court, Defendants.

No. 68–1249–Civ.

United States District Court
S. D. Florida.
June 9, 1969.

Elizabeth J. duFresne, Bruce S. Rogow and Alfred Feinberg, Economic Opportunity Legal Services Program, Inc., Phillip Hubbart, Metropolitan Dade County, Miami, Fla., for plaintiff.

Earl Faircloth, Atty. Gen., Edward D. Cowart and Jesse J. McCrary, Jr., Asst. Attys. Gen., Alan H. Rothstein, City Atty., and Charles K. Allan, Asst. City Atty., Miami, Fla., for defendants.

Before DYER, Circuit Judge, and ATKINS and CABOT, District Judges.

SUMMARY FINAL JUDGMENT

CABOT, District Judge:

Matthew Lazarus is a frequent winter visitor to Miami. While here he is "without reasonably continuous employ-

ment," and also tends to "misspend what he earns," at least in part. And, like the millions of other winter visitors here to enjoy our winter clime, he spends a good deal of his free time (that time when he is without reasonably continuous employment) merely "wandering and strolling about without lawful purpose or object." However, unlike those other tourists, his vacationlike attitude has resulted, on five occasions, in his arrest and trial for violation of the state and city vagrancy laws. Because of this treatment, he has brought this action requesting a declaration that the vagrancy statute, Fla. Statute § 856.02 F.S.A., is constitutionally invalid, and seeking an injunction restraining the defendants and their agents from enforcing it.

■ This court has jurisdiction of this cause on the basis of both the Federal Question Statute, 28 U.S.C. § 1331, and the Civil Rights Statute, 28 U.S.C. § 1343.

The defendants have challenged the jurisdiction of this three-judge court by their motion to dismiss. They further suggest utilization of the abstention doctrine, relying on Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), and Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). Dismissal is also urged on the plaintiff's alleged lack of standing. Plaintiff has filed a motion for summary judgment, contending that there are no factual issues and that the sole question is the constitutionality of Fla. Statute § 856.02, F.S.A. After oral argument, we allowed the parties additional time to file further memoranda.

The two principal points in this case are the jurisdiction of this three-judge court and the constitutional question, both of which are purely legal issues, there being no substantial issues of material fact. They will be discussed separately.

■ As for the other questions raised by defendants' motion to dismiss, the cases defendants rely on in urging abstention, *Dombrowski* and *Zwickler*,

compel us to the opposite conclusion, *i.e.*, it would be error to abstain and we decline to do so. And, with reference to the question of the standing of the plaintiff to challenge the statute, defendant Faircloth's memorandum of January 2, 1969, (adopted by the other defendants), at page 3, states that "[t]he complaint fails to allege that there is any present threat of any violations to the plaintiff." Two months later, on March 7, 1969, and again on March 11, 1969, this issue was resolved by two City of Miami policemen when they arrested plaintiff for vagrancy, under the authority of the statute here under attack. There have been no further arrests, presumably because of the temporary restraining order entered by District Judge Cabot on March 11, 1969, which is still in force. Thus, the plaintiff has standing to raise the issues presented here.

## JURISDICTION

The threshold issue for our consideration is raised by defendant's motion to dismiss, which challenges the propriety of a three-judge court. The three-judge court statute, 28 U.S.C. § 2281, provides in pertinent part:

An interlocutory or permanent injunction restraining the enforcement * * * of any State statute by restraining the action of any officer of such State in the enforcement * * * of such statute * * * shall not be granted by any district court or judge thereof upon the ground of unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title.

Thus, by its terms, § 2281 requires:

1. A state statute alleged to be violative of the Constitution; and

2. A request for relief in the form of an injunction restraining a "state officer" from enforcement of the challenged statute.

■ Defendants' attack finds both points lacking. We disagree and, for

the reasons stated below, find that this is a proper three-judge court case.

Here, there is no question but that the primary thrust of plaintiff's attack is on Fla. Statute § 856.02, F.S.A. Paragraph 1 of the amended complaint (lines 7–12) reveals that plaintiff seeks to restrain defendants from enforcing the state vagrancy statute. Furthermore, paragraphs (c), (d), and (e) of the *ad damnum* clause pray for an injunction to restrain enforcement of the state statute. Defendants raise the problem, however, that plaintiff has also challenged a municipal ordinance, § 38–50 of the Code of the City of Miami, which provides that:

> It shall be unlawful to commit within the City any act which is recognized by the law of the State as a misdemeanor as set out in the Florida Statutes. * * *

The answers to interrogatories of the defendant Porter, as well as the brief filed by the City of Miami's attorney on behalf of defendants Denham and Porter, treat § 38–50 not as incorporating by reference Fla. Statute § 856.02, F.S.A., but rather as authorizing city law enforcement officials to enforce the state statute as such. Whether the city ordinance incorporates or authorizes is an academic question which this court finds unnecessary to resolve, since the docket sheets reflecting plaintiff's arrests and conviction clearly reveal that he was charged (and, in some instances, convicted) under Fla. Statute § 856.02, F.S.A. as well as the city ordinance. As the plaintiff's supplementary memorandum on jurisdiction adequately shows, municipal police officers have the authority to arrest for violations of Fla. Statute § 856.02, F.S.A.[1]

■ Whether the state statute should have been enforced by the municipal officials is irrelevant; *it was*. In a recent case, where a junior college professor was attacking a state imposed loyalty oath, which he was erroneously required to execute, the court said:

> Whether Article 6252–7 applies to * * * [the teacher] as written is of no concern to us. We look only to the effect of the action of state officers applying a state statute under 28 U.S.C. § 2281. An allegation that the effect is violative of the Constitution confers jurisdiction upon a three judge court. Gilmore v. James, 274 F.Supp. 75, 83 (N.D.Tex.1967), aff'd 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783 (Case No. 1, 1968).

The first prerequisite to empaneling a three-judge court is present here, since a state statute alleged to be violative of the United States Constitution is challenged.

The second requirement alleged to be missing here is the proper "state officer." The relief requested is an injunction restraining enforcement. The parties are Paul Denham, the Acting Police Chief of the City of Miami, William Porter, the Prosecuting Attorney in the City of Miami Municipal Court, and Earl Faircloth, Attorney General of the State of Florida. Not made a party is Richard Gerstein, State's Attorney for the Eleventh Judicial Circuit, which includes the City of Miami. This nonjoinder is the basis of defendants' contentions that § 2281 is not applicable.

■ A § 2281 three-judge court is unnecessary where an action seeks to enjoin a local officer when in the performance of duties relevant primarily to his locality.[2] However, the fact that a defendant is a local officer is not controlling. We must look beyond the title of the local officer and consider the function he is performing in the legislative scheme assailed by the suit.[3]

> An official though localized by his geographic activities and the mode of his selection may, *when he enforces a statute which "embodies a policy of*

1. Plaintiff's supplemental memorandum, March 20, 1969, pp. 3–9.

2. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967).

3. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322 (1935).

*statewide concern,"* be performing a state function within the meaning of [the predecessor to § 2281]. [Emphasis supplied.] Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 811, 83 L.Ed. 1242 (1939).[4]

*Browder*[5] is analogous to the situation here. There the attack was on state statutes and municipal ordinances which required segregation by race on the city bus lines. Among the defendants were the bus drivers, who were municipal employees, the city chief of police, and the city recorder (who functioned in criminal cases as a justice of the peace). The court found that the bus drivers had the authority to and did enforce the state imposed segregation. Therefore, when they were so engaged, they were clearly officers of the state, notwithstanding their localized employment. Likewise, the chief of police had the authority to arrest for violations of the statutes and the city recorder presumably had the authority to try those charged with violating the statutes. There, as here, the city officials admitted that they were enforcing the state statutes. Thus, the court concluded that all were "state officers," insofar as the applicability of § 2281 was concerned, and the three-judge court was properly empaneled.

▮ Here, both the defendant Porter, the prosecutor, and the municipal police, under the direction of the defendant Denham, are performing a state function in enforcement of Fla. Statute § 856.02, F.S.A., a statute which "embodies a policy of statewide concern." As such, they are state officers for the purposes of § 2281.

Even in the absence of these local officials, the defendants' arguments would fall, since the defendant Faircloth, as Attorney General, was joined as a party defendant. The duties of the Attorney General of Florida are set out in Fla. Statute § 16.01. In sum, he functions as the chief legal officer of the state.

> As the chief law officer of the state, it is his duty, in the absence of express legislative restrictions to the contrary, to exercise all such powers and authority as public interests may require from time to time. State ex rel. Landis v. S. H. Kress & Co., 115 Fla. 189, 155 So. 823, 827 (1934).

Included in his powers is the direction and supervision of the state's attorneys in the discharge of their duties, Fla. Statute § 16.09, F.S.A. And, when the constitutionality of a state statute is drawn in question, the state requires that he (or a state's attorney) be made a party. Fla. Statute § 86.091, F.S.A. He points out that his office, in most instances, does not handle the prosecutions. These are left up to the state's attorneys and other prosecuting officials. However, he does help administer the law through his statutorily created duty to supervise.

He thus bears the same relationship to the prosecuting officials as the Mississippi Board of Election Commissioners did to the officials giving voter registration tests in that state. And, in United States v. Mississippi, 380 U.S. 128, 85 S.Ct. 808, 13 L.Ed.2d 717 (1965), the Board of Election Commissioners were held to be proper parties before a § 2281 three-judge court.

Thus, the defendant Earl Faircloth, being a state officer under the terms of § 2281, is properly before this court.

Because all three defendants are proper state officers, the second prerequisite for empaneling this tribunal is met and the court concludes that this case presents a proper application of 28 U.S. C. § 2281, and defendants' motions to dismiss are denied.

---

4. See also, City of Cleveland v. United States, 323 U.S. 329, 65 S.Ct. 280, 89 L.Ed. 274 (1945); Spielman Motor Sales Co. v. Dodge, supra; Hyden v. Baker, 286 F.Supp. 475 (M.D.Tenn.1968);

Browder v. Gayle, 142 F.Supp. 707 (M.D. Ala.1956).

5. *Supra,* Footnote 4.

## CONSTITUTIONALITY OF FLA. STATUTE § 856.02, F.S.A.

Turning to the merits, we are confronted by a statute not dissimilar to the *Chicago Disorderly Conduct Ordinance* described by District Judge Will as "one of the most charming grabbags of criminal prohibitions ever assembled." *Landry v. Daley,* 280 F.Supp. 968, 969 (N.D.Ill.1968). Fla. Statute § 856.-02, F.S.A., lists 21 varieties of vagrants as follows:

(1) Rogues and vagabonds, (2) idle or dissolute persons who go about begging, (3) common gamblers, (4) persons who use juggling, or unlawful games or plays, (5) common pipers and fiddlers, (6) common drunkards, (7) common night walkers, (8) thieves, (9) pilferers, (10) traders in stolen property, (11) lewd, wanton and lascivious persons, (12) keepers of gambling places, (13) common railers and brawlers, (14) persons who neglect their *calling* or employment, or (15) are without reasonably continuous employment or regular income and who have not sufficient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, (16) persons wandering or strolling around from place to place without any lawful purpose or object, (17) habitual loafers, (18) idle and disorderly persons, (19) persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, (20) persons able to work but habitually living upon the earnings of their wives or minor children, and (21) all able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants, and upon conviction shall be subject to the penalty provided in § 856.03.

In many respects, the statute reflects the historic verbiage of vagrancy laws which date back 620 years to the English Statutes of Laborers.[6] More importantly, it mirrors the ancient philosophy of the "poor laws."[7] And so, in a day when terms such as "serfdom" and "feudalism" are proper subjects for grade school ancient history classes, we face a penal statute which historically was designed as a substitute for serfdom.[8] And we find, as have so many other courts across the land,[9] that:

> The time has come for [Florida] to adopt a modern [statute] which will enable it to discharge its responsibility for maintaining the peace while at the same time protecting its citizens in the enjoyment of their constitutional rights. *Landry v. Daley, supra,* 280 F.Supp. at 972.

Although plaintiff's attack on this statute is broadbased, we find it unnecessary to test this statute by any constitutional standard other than vagueness and overbroadness.

> That the terms of a penal statute creating a *new offense* must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, con-

**6.** Hicks v. District of Columbia, 383 U.S. 252, 86 S.Ct. 798, 15 L.Ed.2d 744 (1966) (Mr. Justice Douglas dissenting).

**7.** The purpose of these statutes was to offset the loss of workers and to check the rise in wages which resulted from the Black Death. Those able to work, and lacking other means of support were compelled to work, and at regulated wages. Workers were confined to their existing place of residence. II Holdsworth, History of English Law 459–462 (1927). It is said that the object of this legislation was to provide a kind of substitute for the system of serfdom, which was then breaking down. III Stephen, History of the Criminal Law of England, 203 *et seq.* (1883).

**8.** Hicks v. District of Columbia, *supra,* Footnote 6; Douglas, Vagrancy and Arrest on Suspicion, 70 Yale L.J. 1 (1960).

**9.** See, e. g., Smith v. Hill, 285 F.Supp. 556 (E.D.N.D.1968); Landry v. Daley, supra; Baker v. Binder, 274 F.Supp. 658 (W.D. Ky.1967); Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426 (1967).

sonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).[10]

Contrasted with these constitutional principles so basic to freedom is the avowed purposeful indefiniteness of vagrancy statutes. Vagueness is the hallmark of these laws, so that the authorities are not restrained by definite boundaries of the text. This feature allows "the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution * * *," Winters v. People, 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840 (1948) (Mr. Justice Frankfurter dissenting).

An adjunct of the vagueness argument and an additional vice of this statute is its obvious overbroadness. Because of its vague language, it may be used to "criminalize" conduct which is beyond the legitimate reach of the state's police power. That is, it punishes conduct of an individual which in no way impinges on the rights or interests of others. Fenster v. Leary, supra.

On three occasions, plaintiff was arrested, charged, and tried for being without reasonably continuous employment or regular income, and with not having sufficient property to sustain himself. Yet, how is he to know how continuous his employment must be so as to satisfy the authorities? What is sufficient property to sustain himself? For that matter, how well must he sustain himself so as to protect him from being "sustained" in the county jail?

A few further examples of the scope of this statute should suffice. It brands as criminals "persons able to work but habitually living upon the earnings of their wives or minor children." Does this mean that any of the male students attending the law schools of this state whose wives work to provide the funds so that they may devote their full time to the study of law must either find a job or suffer the penalties of Fla. Statute § 856.02, F.S.A.? The clear wording of the statute requires an affirmative answer, yet no one could reasonably argue that the state has the constitutional authority to compel such a result.

The statute punishes "common railers." To "rail" is defined as "to revile or scold in harsh, insolent, or vituperative language." Webster, New International Dictionary (3d Ed. 1967). Can a husband, coming home too late from the proverbial "night out with the boys," and who is met by a vociferously angry wife, swear out a warrant for her arrest as a vagrant on the grounds that by her scolding she was a common railer? While some may find a degree of justice in such a result, it surely is a sanction beyond the legal capacity of the state.

In Territory of Hawaii v. Anduha, 48 F.2d 171 (9 Cir. 1931), the court affirmed the Hawaiian Supreme Court's voiding of a territorial vagrancy ordinance, which was similar to Fla. Statute § 856.02, F.S.A. in that it punished idleness and loafing. What Judge Rudkin said there is equally applicable here:

All loitering, loafing, or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated to harm and that which is essentially innocent.

Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them, having no other occu-

10. Accord, Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939).

pation, habitually but harmlessly idle or loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loiter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed. Is the legislature empowered to declare them lawbreakers? Children, who have reached the age of legal responsibility, on their way to and from school habitually loiter along the sidewalks. If the statute is constitutional they are in danger of imprisonment even though their manner of using the sidewalks is without probable injury or inconvenience to anyone. Territory of Hawaii v. Anduha, *supra*, at 172.

While there may be some valid segments to this statute, as in Landry v. Daley, *supra*, they are so inextricably intertwined with the invalid that it is impossible to separate the wheat from the chaff and to sever that which could remain.

▮ Accordingly, the court concludes and declares that Fla. Statute § 856.02, F.S.A. is unconstitutional, the temporary restraining order of March 11, 1969, is made permanent, and the defendants, their agents, servants, and employees are hereby permanently enjoined from enforcing or applying said statute.