**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Robert H. KILGEN, Jr., and Gary Lee Ansley, Defendants-Appellants.**

**No. 27424.**

United States Court of Appeals, Fifth Circuit.

July 9, 1970.

Brown, Chief Judge, filed opinion concurring in part and dissenting in part.

Robert L. Parks, Miami, Fla., for defendants-appellants.

William A. Meadows, Jr., U. S. Atty., Lloyd G. Bates, Jr., Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and MORGAN, Circuit Judges.

TUTTLE, Circuit Judge:

Robert Kilgen, Jr. and Gary Ansley were arrested approximately 1:15 A.M. on October 27, 1968, in West Palm Beach, Florida, for the crime of vagrancy "by wandering about from place to place with no lawful purpose." The city ordinance outlawing such conduct is contained under Section 33.63 of the Ordinances of the City of West Palm Beach, which in turn is similar to a state statute. This ordinance, which, we think appellant aptly, although somewhat colorfully, characterizes in the following terms, "a college English major might read it as a casting advertisement in an Elizabethan newspaper for the street scene in a drama of that era," having been the basis of the arrest and being attacked as unconstitutional, is here reproduced in full:

> "Rogues and vagabonds, idle or dissolute persons who go about begging, common gamblers, persons who use juggling, or unlawful games or plays, common pipers and fiddlers, common drunkards, common night walkers, thieves, pilferers, traders in stolen property, lewd, wanton and lascivious persons, keepers of gambling places, common railers and brawlers, persons who neglect their calling or employment, or are without reasonable continuous employment or regular income and who have no sufficient property to sustain them, and misspend what they earn without providing for themselves or the support of their families, persons wandering or strolling around from place to place without any lawful purpose or object, habitual loafers, idle and disorderly persons neglecting all lawful business and habitually spending their time by frequenting houses of ill fame, gaming houses or tippling shops, persons able to work but habitually living upon the earnings of their wives or minor children and all able bodied male persons over the age of eighteen years who are without means of support and remain in idleness, shall be deemed vagrants."

At the time of their arrest, it is undisputed that these two men were walking in an area of town where there were only two bars open in the early morning hours, and when they were approached by the police and asked to state what they were doing, they gave conflicting information as to their purpose. They, together with a third person, Doremus, had parked a car in which they had been traveling and which was owned by Ansley, in a lot across from the bar on Okeechobee Boulevard. They were approximately a half a block from the car, and had gone behind a vacant filling station, where they used toilet facilities, and then proceeded to walk west on Okeechobee Boulevard at the time they were apprehended by the police officers. Each of the three men was wearing a heavy coat, and at least two, the appellants here, were wearing gloves. The police officer testified that it was a chilly evening and that it was not unusual for someone to wear a jacket.

The police officer testified that he had no reason to believe that these three had committed a crime at the time he stopped them, except the crime of "walking down the street in West Palm Beach at 1:15 A.M." He thought that it was a "good possibility" that they were going to do something. He placed them under arrest for vagrancy and specifically that portion of the ordinance charging them with "wandering and strolling about from place to place with no lawful purpose or object."

Ansley requested that he be returned to his car before being taken to the po-

lice station in order that it might be locked. The officer agreed, placed the three in the rear of the police cruiser, and returned to the parking lot where Ansley gave him the keys to lock the car. The police officer Flesh noticed a box of pistol ammunition and a pistol barrel sticking out from underneath the driver's seat. The trial court found that with Ansley's consent, Officer Flesh proceeded to make a cursory search of the car, including opening the trunk because he stated that it was impossible to lock the car and he wished to open the trunk in order to place the property in the trunk.

Upon opening the trunk there was apparent to view a worker's steel helmet containing a great many United States stamps, and several folders which also contained a large number of stamps.

The men were taken to the police station, booked for vagrancy, and taken into a cell until the next morning. At that time Kilgen was interrogated for three to four hours. He was then interrogated by a United States postal inspector, who, first however, advised him of his legal rights—a full Miranda warning. As a result of this interrogation Kilgen made an inculpatory statement as did Ansley. At the time of the making of the statements they were being held only under the charge of vagrancy.

Based on the information obtained by the Postal Inspector as a result of the interrogations, indictments were brought against the two appellants for two counts for violations of 18 U.S.C.A. § 641, and 18 U.S.C.A. § 2115, the first charging concealing money orders and stamps be-

longing to the United States Post Office Department, and the second with breaking and entering a United States Post Office. Both defendants waived a jury trial and counsel then filed a motion to suppress the physical evidence and the confessions of Ansley and Kilgen. Full testimony was given with respect to the motion to suppress, and upon the conclusion of the testimony, counsel for the accused parties agreed that all of the evidence that would normally be used on a full trial had been introduced, and the case was submitted to the trial court on the same evidence.

The trial court, in making its judgment, included the following: "Patrolman Flesh's arrest of the defendants based on the foregoing for 'wandering around from place to place without any lawful purpose or object,' in violation of Section 33.63 of the Code of the City of West Palm Beach, Florida, was a valid and lawful arrest."

The trial judge seems to have been impressed, in making this holding, by the fact that the Florida Supreme Court had expressly upheld the constitutionality of the ordinance. See Johnson v. State of Florida, Fla., 202 So.2d 852.[1]

In the meantime, a three-judge federal court, sitting in the Southern District of Florida, considering a direct attack upon the constitutionality of the state statute with the precise wording of the ordinance here in question, unanimously held the statute to be unconstitutional. See Lazarus v. Faircloth, Attorney General, etc., U.S.D.C., S.D.Fla., 301 F.Supp. 266.

The appellants contend that this ordinance was unconstitutional, and that,

1. On appeal to the United States Supreme Court, that Court found that there was no proof that Johnson had been "wandering or strolling around from place to place," a necessary ingredient of the offense charged. The Court, therefore, concluded that the record was lacking in any evidence to support the judgment and in line with Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654, the Supreme Court reversed the judgment. Although Johnson attacked the constitutionality of the ordinance and the state statute, here involved, the Supreme Court made its decision "without reaching other constitutional questions that are tendered." Two Justices, in dissenting opinions, stated, "The Court does not reach the claim appellant makes there that the Florida statute offends the constitution because it is vague. That claim is substantial, and [we] would note probable jurisdiction and set the case for oral argument."

therefore, their arrests were illegal and that the subsequent events all stemmed from the illegal arrest, which, thus tainted both physical and written evidence which was made the subject of the motion to suppress. Therefore, they argued, the trial court erred in denying the motion and in finding a judgment of guilty based solely on such evidence.

We thus are presented with two questions: Was the ordinance unconstitutional, causing the arrests to be illegal, and, if so, did this so taint the subsequent proceedings as to require a reversal of the judgment of the trial court overruling the motion to suppress and the judgment of conviction and sentence based thereon?

As noted, the Supreme Court was given an opportunity to pass upon the constitutionality of a Florida state statute with precisely the same terminology as this city ordinance. As is the custom of the Supreme Court, it did not reach the question of the constitutionality of the statute, in light of its finding that there was a denial of due process in the trial court under the principle of Thompson v. Louisville, supra, because of the utter want of evidence to support the conviction, thus pretermitting a determination of the constitutional issue. The two dissenting judges felt that there was adequate evidence to support the conviction if the statute was valid, but they felt that the constitutional attack was substantial and that it ought to be put down for argument and consideration by the Court.

We find no way to avoid passing on the constitutionality of the City Ordinance. Being faced with such responsibility, we have no hesitation in saying that it is clearly unconstitutional for vagueness. We find it unnecessary to test the statute by any constitutional standard other than that, and its over-breadth. In this connection we adopt as correct the language used by the three-judge court in Lazarus, supra:

"That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law; and a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law. Connally v. General Const. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926).

"Contrasted with these constitutional principles so basic to freedom is the avowed purposeful indefiniteness of vagrancy statutes. Vagueness is the hallmark of these laws, so that the authorities are not restrained by definite boundaries of the text. This feature allows 'the net to be cast at large, to enable men to be caught who are vaguely undesirable in the eyes of police and prosecution * * *' Winters v. People, 333 U.S. 507, 540, 68 S.Ct. 665, 682, 92 L.Ed. 840 (1948). (Mr. Justice Frankfurter dissenting)."

We now consider the over-breadth of the "grab bag of criminal prohibitions" contained in it. As stated in Lazarus, supra, "because of its vague language it may be used to 'criminalize' conduct which is beyond the legitimate reach of the state's police power. See Fenster v. Leary, 20 N.Y.2d 309, 282 N.Y.S.2d 739, 229 N.E.2d 426. What the Court of Appeals for the Ninth Circuit said in Territory of Hawaii v. Anduha, 9 Cir., 1931, 48 F.2d 171, particularly in light of the well-known efforts of the city of Miami to attract visitors to its salubrious and attractive climate and beaches, is equally applicable here:

"All loitering, loafing or idling on the streets and highways of a city, even though habitual, is not necessarily detrimental to the public welfare nor is it under all circumstances an interference with travel upon them. It may be and often is entirely innocuous. The statute draws no distinction between conduct that is calculated

to harm and that which is essentially innocent.

"Visitors, lured by the fame of our climate and of our natural scenery and the hospitality of our people, come here for recreation and pleasure. Many of them having no other occupation, habitually but harmlessly idle and loiter upon our streets and highways. In their pursuit of happiness, which is a guaranteed right, they loiter before shop windows, pause to enjoy the changing colors of the ocean and to talk with friends. It would be shocking to say that so long as they are innocent of any wrong and conduct themselves with due regard to the rights of others and the good order of the community the legislature has the constitutional authority to declare them misdemeanants and subject them to arrest and imprisonment. Also, there are persons who, taking advantage of the leisure they have on the Sabbath, habitually go for long hikes along the public highways. When weariness overtakes them they stop for rest. Attracted by the beauties of the landscape they loiter and idle for as long as they choose. The free use of the highway by others is not impeded and the public peace is not disturbed. Is the legislature empowered to declare them lawbreakers? Children, who have reached the age of legal responsibility, on their way to and from school habitually loiter along the sidewalks. If the statute is constitutional they are in danger of imprisonment even though their manner of using the sidewalks is without probable injury or inconvenience to any one." Territory of Hawaii v. Anduha, 48 F.2d 171, 172, 173.

While some of the quoted language seems in somewhat too light a tone to deal with such a serious constitutional problem, we think it bordering on the fantastic to contend that everything listed in this relic of the English statute of

laborers[2] can come within the power of the state to forbid, with criminal sanctions in this day.[3]

In sum, we agree with the three-judge district court that this ordinance is unconstitutional for vagueness and overbreadth.

This brings us then to the second question which is whether, assuming the illegality of the arrest, the subsequent occurrences amounted to an "exploitation of that illegality." See Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441, and Morales v. New York, 396 U.S. 102, 90 S.Ct. 291, 24 L. Ed.2d 299, 1969.

Here, if the two appellants had not been illegally taken into custody by the police officers under the void city ordinance, there would have been no opportunity for the police to have seen the articles in the trunk of appellant's automobile, nor would they ever have been questioned by the postal inspector at the police station after they had been booked on a charge of vagrancy. In Phelper v. Decker, 401 F.2d 232, 5 Cir., 1968, this court said, in listing some of the guidelines to be utilized in attempting to detect whether the Wong Sun test has been met, that is, whether the taint has become sufficiently dissipated:

"One consideration is the proximity of the illegal arrest to the procurement of the confession or other evidence. While time is one consideration, that alone is not sufficient. As pointed out in Collins v. Beto, [5 Cir., 348 F.2d 823] police could then keep a suspect 'on ice' for a few days and then use everything he says. A second consideration would be other intervening occurrences between the illegal arrest and the acquisition of the evidence sought to be used. For example, the intervening guidance of any attorney would be one factor helpful in dissipating the taint, as would warnings of constitutional rights.

---

2. Hicks v. District of Columbia, 383 U.S. 252, 86 S.Ct. 798, 15 L.Ed.2d 744 (Mr. Justice Douglas dissenting).

3. See the discussion of the history of these laws in Lazarus v. Faircloth, 301 F.Supp. 266 at 271.

But third, and most important, the courts should follow the Supreme Court's own suggestion and consider the circumstances under which the arrest was made. Inextricably bound up in this consideration would be whether the arrest was illegal as a matter of failure to comply with technical requirements or whether the arrest and subsequent search and seizure amounted to a gross violation of legal processes." 401 F.2d at 231, 232.

Here, there was no technical violation. There was an arrest in violation of appellants' constitutional rights. The only intervening occurrence present here was the warning they received by the postal authority of their constitutional rights. This, we do not think is sufficient to break the chain of events that led directly from the illegal arrests to the giving of the confession to the postal authorities while appellant was in custody under the illegal restraint. Here we have no simple "stop and frisk" case, such as was present in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889. Here there was an illegal arrest, a systematic search, and utilization of the products of the search in the obtaining of a confession.

We conclude that the trial court erred in not suppressing the material evidence, as well as the confession, and that this error produced a judgment of guilt, which cannot stand.

The judgment is reversed and the case is remanded to the district court for further proceedings not inconsistent with this opinion. The appeal originally filed by Gary Lee Ansley having heretofore, to wit on the 21st day of October, 1969, been dismissed upon the said Ansley's motion, the reversal, of course, affects only the judgment and conviction of appellant Robert H. Kilgen, Jr.

BROWN, Chief Judge (concurring in part, dissenting in part):

I concur in the decision and opinion holding the ordinance unconstitutional and the arrest illegal. I dissent as to the inadmissibility of the extrajudicial statements and reserve the right to file a dissenting opinion when the Court announces its decision in United States v. Brookins, 423 F.2d 463, now pending on rehearing before the Court en banc.