Siegfried **HERNANDEZ**, Plaintiff,

v.

**EUROPEAN AUTO COLLISION, INC.,**
**et al., Defendants.**

**No. 72–C–629.**

United States District Court,
E. D. New York.

July 21, 1972.

Kalman Finkel, The Legal Aid Society, Civil Appeals Bureau, by John E. Kirklin, New York City, for plaintiff.

Martin H. Leonard, New York City, for defendants and intervenor, Auto Body Craftsmen's Guild, Inc.

Louis J. Lefkowitz, Atty. Gen., by A. Seth Greenwald, New York City, for intervenor, State of New York.

## MEMORANDUM AND ORDER

COSTANTINO, District Judge.

Predicating jurisdiction upon 28 U.S. C. §§ 1331, 2281 (1970) and, alternatively, upon 42 U.S.C. § 1983 (1970) and 28 U.S.C. § 1343(3) (1970), the plaintiff's complaint challenges that part of the New York Lien Law which grants the owner of a place for the storage, maintenance, keeping or repair of motor vehicles a lien against a motor vehicle in his possession for nonpayment of charges arising from the services he has undertaken with the consent of the owner of the motor vehicle. N.Y.Lien Law § 184 (McKinney 1966, Supp. 1971). More specifically, the plaintiff challenges that portion of the law authorizing the lienor to summarily detain his motor vehicle, *id.*, and to sell the motor vehicle at public auction with the lienor retaining from the proceeds of the public sale a sum equal to the amount of the indebtedness plus the expenses of the advertisement and sale, *id.* §§ 200–202, 204. For relief, in addition to his claim for damages, the plaintiff has requested the court to issue an order (1) convening a three-judge court to pass on the constitutionality of the challenged statutory provisions and (2) temporarily restraining the sale of his automobile at public auction;[1] if however, a three-judge court is not to be convened, the plaintiff would then have the court issue

a preliminary injunction prohibiting the sale of the automobile and commanding its return to the plaintiff pending full determination of the alternative cause of action arising under the civil rights statute. Intervening in defense of the constitutionality of the challenged provisions of the lien law, the Attorney General of the State of New York has opposed the convening of a three-judge court and seeks to dismiss the complaint for the lack of a substantial federal question.

### Facts

After the plaintiff's automobile was wrecked in an accident, it was towed to the European Auto Collision, Inc., a defendant named in this action. The plaintiff instructed one of the defendant's employees that no repairs were to be made on the automobile until further authorization by him pending an independent damage appraisal by an insurance adjustor.[2] Despite the plaintiff's specific instructions, the defendant garagemen fully repaired the plaintiff's automobile prior to the insurance adjustor's appraisal and without authorization from the plaintiff. Additionally, the plaintiff questions not only the itemization of the repairs made but also the necessity of some of the repairs the garage claimed to have made.

Subsequently, when the plaintiff refused to pay the bill presented to him by the garage, pursuant to the lien law the garage detained the plaintiff's automobile to satisfy the claimed indebtedness, depriving the plaintiff of the use and enjoyment of his property. As storage charges mounted and the value of

---

1. The court granted the plaintiff's *ex parte* request for the issuance of a temporary restraining order barring the scheduled public sale of the plaintiff's automobile. This order has continued in effect at the consent of all the parties.

2. The plaintiff's claim that no consent to repair was given is controverted by the garage. Axiomatically, since the court is ruling on a motion to dismiss, the averments of the plaintiff's complaint must be

deemed true. Interestingly enough, however, under New York law a garageman's lien cannot attach without consent; absent consent the garageman cannot even retain the automobile as security for the debt owed him. Nonetheless, the facts as stated by the plaintiff are consistent with his argument that since the statute itself provides no hearing prior to sale even when, as here, the validity of the debt and lien are challenged the statute is offensive to the Due Process Clause.

the automobile depreciated, the garage sent the plaintiff notice that unless the bill was paid by the noticed date, the garageman's lien would be enforced at a public sale 21 days after the noticed date. In order to prevent the scheduled sale at public auction, the plaintiff filed this action accompanied by a request, which this court granted, see note 1 *supra,* for an order temporarily restraining the defendants from selling the plaintiff's automobile.

## Three-Judge Court

In enacting 28 U.S.C. § 2281 (1970) the Congress has made the convening of a district court of three judges incumbent to entertain a complaint seeking to enjoin a state officer from enforcing a state statute on the grounds of its alleged unconstitutionality. But, § 2281 is not "a measure of broad social policy," rather it is "an enactment technical in the strict sense of the term and to be applied as such." Phillips v. United States, 312 U.S. 246, 251, 61 S.Ct. 480, 483, 85 L.Ed. 800 (1941). Before a three-judge court can be convened, then, the complaint must (1) allege that a statute of state-wide application violates the Constitution and (2) request relief in the form of an injunction restraining a state official from enforcing the challenged statute. See Lazarus v. Faircloth, 301 F.Supp. 266 (S.D.Fla. 1969), vacated on other grounds, Shevin v. Lazarus, 401 U.S. 987, 91 S.Ct. 1218, 28 L.Ed.2d 524 (1971). Here, while not controverting the allegation that the challenged provisions of the lien law are of statewide application, the State argues that the complaint is fatally defective on the second requirement in failing to seek injunctive relief against a state officer.

The plaintiff, on the other hand, contends that the municipally licensed public auctioneer, defendant Samuel Greenspan, designated by the defendant garage to enforce its lien against the plaintiff's automobile, is a local officer acting pursuant to the challenged state statute. The plaintiff correctly points out that under § 2281 the geographical extent of the official's powers or the mode of his selection are not in issue; what is decisive is whether the complaint is seeking to enjoin a public official or employee from performing those functions required of him by the state statute. Rorick v. Board of Commissioners, 307 U.S. 208, 212, 59 S.Ct. 808, 83 L.Ed. 1242 (1939). Consequently, a complaint seeking to enjoin a local official from acting pursuant to a statewide statute would be within the scope of § 2281. Moody v. Flowers, 387 U.S. 97, 101–102, 87 S.Ct. 1544, 18 L.Ed. 2d 643 (1967).

Nevertheless, the plaintiff cannot succeed on his motion to convene a three-judge court. Defendant Greenspan, the only person sought to be enjoined by the plaintiff who could possibly convey § 2281 jurisdiction on this court, is neither a state nor local official; he is merely a private businessman regulated by a municipal licensing ordinance and essentially acting for his own benefit and that of his principal, European Auto Collision, Inc. Clearly, § 2281 does not as a matter of language nor as a matter of policy extend to a private person, Hall v. Garson, 430 F.2d 430 (5th Cir. 1970), even though he may be performing state functions for the purpose of the "state action" requirement of 42 U.S.C. § 1983 (1970), United States v. Wiseman, 445 F.2d 792 (2d Cir.), cert. denied, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971).[3] Thus a

---

3. The plaintiff cites several cases in support of his contention that the auctioneer is a state officer within the meaning of § 2281. His reliance on these cases is misplaced. In Browder v. Gayle, 142 F. Supp. 707 (M.D.Ala.), aff'd per curiam, 352 U.S. 903, 77 S.Ct. 145, 1 L.Ed.2d 114 (1956), a three-judge court found

drivers of buses operated by a private bus company enforcing a state law requiring racial separation on public conveyances to be state officers. But, in addition to the bus drivers, the suit also named as defendants municipal and state officials against whom a request for injunctive relief would clearly support that

three-judge court cannot properly be convened.

### Civil Rights Action

■ The complaint also states a claim under the Civil Rights Act seeking a judgment declaring the challenged provisions of the lien law unconstitutional, an order enjoining their enforcement and monetary compensation for damages directly attributable to the actions taken by the defendants pursuant to the lien law. In order to state a cause of action arising under 42 U.S.C. § 1983 (1970) the plaintiff must allege, first, the deprivation of a right, privilege or immunity secured by the Constitution or laws of the United States and, second, that the deprivation was caused by a person acting under color of a state statute, ordinance, regulation, custom or usage, i. e., he must allege the presence of state action, see United States v. Price, 383 U.S. 787, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). But, here, however, treating the plaintiff's allegations as true in ruling upon the State's motion to dismiss, see e. g., Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), and even assuming that the defendants are acting under color of state law, the court cannot find that the plaintiff's constitutional right to due process of law has been deprived by

the operation of the challenged provisions of the lien law. Consequently, in light of the failure of the plaintiff's complaint to pass muster on the first requisite to a § 1983 action the court need not go further and formally pass upon the second requirement—the presence of state action.[4]

### Due Process of Law

■■ Fundamental to the concept of due process of law secured by the fourteenth amendment stands the principle that no one should be deprived of life, liberty or property without notice adequate to apprise him of the impending risk to his rights and a fair opportunity to be heard in opposition to those seeking to deprive him of those rights. Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944); Coe v. Armour Fertilizer Works, 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915). Unquestionably, an attempt to deprive a person of a significant interest in property, whatever the nature of that property or the duration of the deprivation, falls within the protective sphere of the due process requirements of the fourteenth amendment. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 1998–

court's jurisdiction. In fact, Lazarus v. Faircloth, 301 F.Supp. 266 (S.D.Fla. 1969), vacated on other grounds, Shevin v. Lazarus, 401 U.S. 987, 91 S.Ct. 1218, 28 L.Ed.2d 524 (1971), a case the plaintiff brings to the court's attention because it cites *Browder* with approval, notes, quite possibly in an attempt to harmonize *Browder* and the language of the statute, that the bus drivers in *Browder* were "municipal employees." 301 F. Supp. at 270. The same infirmity plagues Gilmore v. James, 274 F.Supp. 75 (N.D. Tex.1967), aff'd per curiam, 389 U.S. 572, 88 S.Ct. 695, 19 L.Ed.2d 783 (1968). The defendants in *Gilmore* were trustees of a Texas junior college. Under Texas law, however, junior colleges are public corporations of the state and their trustees are deemed state administrators. If, as in *Gilmore*, the junior college was af-

filiated with a county school division, then under Texas law the trustees were deemed county officers. Here, however, the defendant auctioneer is neither a state nor local official, he is nothing more than a private businessman subject to municipal regulation.

4. The presence of state action, however, would seem to be quite manifest. Though he is a private individual, the lienor through the public auctioneer it has retained is performing a traditionally public function pursuant to a right accorded it by a state statute. See, e. g., Adickes v. S. H. Kress & Co., 398 U.S. 144, 150, 166, 171–173, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Hall v. Garson, 430 F.2d 430, 439, 442 (5th Cir. 1970); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390, 393 (N.D.Ill.1972).

1999, 32 L.Ed.2d 556 (1972). Thus, in separate challenges to § 184 of the lien law—allowing the defendant garage to detain and hold the plaintiff's automobile as a res to satisfy the claimed indebtedness—and to §§ 200–202 and § 204 of the law—which, taken together, allow the garage to sell the plaintiff's automobile at public auction in satisfaction of the charges claimed by the garage—the plaintiff argues that he has been deprived of his right to due process of law in that the statutory scheme does not accord him an appropriate hearing at a meaningful time to oppose the right of the garage to deprive him of the enjoyment and use of his motor vehicle prior to the time the statute permits such a deprivation. See *Bell, supra,* 402 U.S. at 541–542, 91 S.Ct. 1586, 29 L.Ed.2d 90; Boddie v. Connecticut, 401 U.S. 371, 378, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Armstrong, supra,* 380 U.S. at 550–52, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965).

■ The plaintiff's argument that § 184 of the lien law operates to deprive him of due process of law cannot be sustained. Though it is uncontrovertible that the plaintiff has been deprived of the use and enjoyment of his motor vehicle because of its detention by the defendant garage, it is equally uncontrovertible that the garage came into possession of the vehicle only after the plaintiff voluntarily surrendered it to the garage, albeit for the limited purpose of storage pending insurance appraisal, rather than by a unilateral act of taking or seizure in behalf of the garage. This voluntary surrender of the vehicle to the garage for the purpose of storage has, to the extent of the debt claimed, created a lien against the plaintiff's vehicle now in the garage's possession. Consequently, due to the plaintiff's voluntary act, under New York law the defendant garage also has a property interest in the plaintiff's automobile entitling it to possession.

■ As the plaintiff has so forcefully argued, it is no longer open to question that when a significant property interest is at stake, compliance with the safeguards of procedural due process is constitutionally required. *Fuentes, supra,* 407 U.S. 67, 92 S.Ct. at 1997–1998, 32 L.Ed.2d 556. The right to be heard in defense of a property interest is not dependent upon the vesting of full title nor is it dependent upon "an advance showing that one will surely prevail" when the rights of the contesting parties are finally determined. *Id.* Here, while the plaintiff denies that he owes the garage a debt of $1311.50, because he admits in his complaint the act of voluntary surrender of the automobile to the garage and because he acknowledges nonpayment, in actuality, it is the amount rather than the existence of a debt that is in issue between these parties. To put it another way, since the garage claims a significant property interest entitling it to possession even though the plaintiff challenges both the existence of and the significance of the property interest claimed, the garage must also be afforded procedural due process. *Fuentes, supra;* Laprease v. Raymours Furniture Co., 315 F.Supp. 716, 723 (N.D. N.Y.1970). Hence, in passing on the constitutionality of a statutory authorization to a garageman to detain and hold a motor vehicle voluntarily surrendered to him in satisfaction of the charges flowing from the terms of that voluntary surrender, the essential question before the court is the constitutionality of the means which New York has chosen to provide in settling conflicting claims that would entitle either claimant to possession of a particular item of property.

■ Under New York law the owner of a motor vehicle subject to a garageman's lien has the right to "tender the amount, if any, which he claims that he owes and replevy the property from the possession of the lienor, if he then refuses to surrender it." Dininny v. Reavis, 100 Misc. 316, 317, 165 N.Y.S. 97, 98, aff'd, 178 App.Div. 922, 165 N.Y.S. 97 (1st Dep't 1917). In any case, the lienor is under a legal obligation to enforce his lien promptly to mitigate the costs chargeable to the owner of the

property. See, e. g., Morgan v. Murtha, 18 Misc. 438, 42 N.Y.S. 374 (App.T. 1896) (warehouseman's lien). Clearly, since this court finds the lien enforcement provisions of the New York law to be constitutional, *infra,* either of the remedies afforded by New York law to the owner of a motor vehicle subject to a lien—the opportunity to initiate a replevin action to challenge the detention and holding of the vehicle or the opportunity to challenge the enforcement of the lien itself by seeking equitable relief —comport with the requirements of due process. The constitutionality of the New York law must be upheld because, though an owner's voluntary act of surrender of property to another person can create a property interest in that person, New York also provides a means to challenge at a judicial hearing the propriety of any property interest that might be claimed by the person to whom the property was surrendered. Where property interests are alleged to be in conflict, a legislative determination, such as the one made by New York, placing the responsibility of initiating an action and of bearing the burden of proof upon the party seeking to recover possession rather than upon the party in possession violates neither the principles of due process of law nor those of equal protection under law. Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 870–871, 873–874, 31 L.Ed.2d 36 (1972).

■ The plaintiff's remaining constitutional objection—a challenge to the lien enforcement provisions of the statute, §§ 200–202 and 204—at first would appear to be quite substantial. These sections of the lien law authorize the lienor, even when his claimed property interest can be open to question, to extinguish at public sale not only the property interest he claims but also the interest and title of the property's owner. Yet, this legislative determination providing for the enforcement of a garageman's lien is substantially the same as the statutory provision allowing enforcement of a warehouseman's lien, see N.Y. U.C.C. § 7–210 (McKinney 1964) that was

held constitutional in Magro v. Lentini Bros. Moving & Storage Co., 338 F.Supp. 464 (E.D.N.Y.1971), aff'd mem., 460 F. 2d 1064 (2d Cir., 1972), cert. denied, 406 U.S. 961, 92 S.Ct. 2074, 32 L.Ed.2d 349 (1972). *Magro,* in effect, precludes the argument here.

A garageman's lien is enforceable by the public sale of the motor vehicle detained to satisfy the charges of the lienor. N.Y. Lien Law § 200 (McKinney 1966, Supp.1971). The lienor must serve the owner with a notice of the sale containing a statement describing the nature of the agreement under which the lien arose, the property to be sold, an estimate of the value of the property, and the amount of the debt claimed at the date of notice. *Id.* § 201. Further, the notice must set a final date for payment not less than ten days from the date of service, stating the time and place of the sale if the debt is not paid. *Id.* The property still may not be sold, however, until the lienor publishes notice of the sale in a local newspaper once a week for two consecutive weeks *after* the time for payment of the lien specified in the notice. *Id.* § 202. After the sale, the lienor can retain an amount to satisfy his lien plus the expenses of the advertisement and sale with the remainder being subject to the original owner's demand. *Id.* § 204.

In reviewing the means New York has provided for enforcement of the garageman's lien, it is obvious that the statutory notice more than adequately complies with the requirements of procedural due process. The required notice is detailed and informative and provides an absolute minimum of 24 days between the time the owner is informed of the public sale and the date scheduled for the sale. Therefore, the only avenue of constitutional challenge open to the plaintiff is the failure of the statute to mandate a judicial hearing prior to public sale.

■ A mandated judicial hearing, however, is not constitutionally required. To satisfy the hearing requirement of procedural due process, the statute, as construed by the state courts, must provide an opportunity to challenge the basis

**320**

of the alleged debt. See *Coe, supra,* 237 U.S. at 423–425, 35 S.Ct. 625, 59 L.Ed. 1027. Where there is a real opportunity to be heard, a statute that provides only for notice prior to authorizing a deprivation of a property right may not be constitutionally defective. See, e. g., *Anderson National Bank, supra; Magro, supra.* In New York an owner whose property is threatened with a lien sale can seek to enjoin such a sale in state court while at the same time determine the proper amount of the lien if one is found to exist. *Dininny, supra,* 100 Misc. at 316, 165 N.Y.S. at 98. Moreover, since the challenged statute provides the owner with a minimum of 24 days notice of the proposed lien sale, the owner has ample opportunity to institute an action to assert his objections to the proposed sale. Given adequate notice and a meaningful opportunity to be heard at a judicial proceeding and in light of the realities of a situation where as the length of time increases the costs to the lienor increase while the value of the property that secures the debt owed diminishes, the judgment of the legislature embodied in the summary procedures challenged in this action must not be disturbed. The question before this court is not whether a fairer system can be devised in securing for the garageman what is due him; the only question before the court is whether the system in operation today comports with the due process requirements of the fourteenth amendment. This court finds that it does.

*Conclusion*

The plaintiff's motion to convene a three-judge court is denied. The motion of the defendants and intervenors to dismiss the complaint is granted. Further, the order of this court temporarily restraining the sale of the plaintiff's automobile is extended until July 31, 1972 to allow the plaintiff to seek an additional extension of the restraining order from the court of appeals pending appeal of the judgment of this court, or, in the alternative, to seek relief in the appropriate state court to enjoin any future sale.

So ordered.